**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

IN RE:

LITESTREAM HOLDINGS, LLC,                CASE NO. 19-26043-MAM

    Debtor.                                                   Chapter 11

_____/

## CREDITOR LENNAR HOMES LLC'S MOTION TO APPOINT TRUSTEE

Creditor Lennar Homes LLC ("Lennar") moves pursuant to 11 U.S.C. § 1104 for the appointment of a Chapter 11 trustee in this case. The debtor, Litestream Holdings, LLC ("Litestream" or "Debtor"), through its sole manager Paul Rhodes ("Rhodes"): (a) has looted the company of hundreds of thousands of dollars prior to bankruptcy to the detriment of creditors such as Lennar; (b) has ceded control and direction of the company to its secured lender; and (c) has repeatedly made false statements or omissions in its Schedules and Statement of Financial Affairs, all of which are related to Rhodes' control and transfers made for his benefit prior to bankruptcy. Creditors are entitled to a conflict-free fiduciary who will act to maximize value for all constituencies, which requires appointment of a trustee here. In support of this motion, Lennar states:

## BACKGROUND

### 1.    Lennar's Litigation Against Litestream

In September 2007, Litestream entered into a contract with a developer to provide telecommunications, cable and internet services to the Palencia North Master Planned Community ("Palencia") in St. Johns County, Florida. In December 2013, the contract was assigned to Lennar. In exchange for the exclusive right to provide services to the community, Litestream was required to pay 10% of its gross revenues to Lennar, by January 31 of each year. Litestream failed to make

the required payments to Lennar, and in October 2017, Lennar filed a lawsuit against Litestream (the "Lennar Action") in St. Johns County Circuit Court ("State Court").

At the § 341 Meeting of Creditors, Rhodes, appearing on behalf of the Debtor, claimed that Litestream elected not to defend the Lennar Action. That is false. After a default was entered, Litestream moved to set aside the default (to which Lennar agreed) and filed an answer which asserted multiple affirmative defenses. Litestream also responded to written discovery requests. It was only after Litestream failed to produce a corporate representative for deposition despite a court order directing it to do so, and failed to timely employ substitute counsel after its third set of lawyers withdrew and after yet another default had been entered and vacated, that the State Court entered a Judicial Default against Litestream in the Lennar Action on February 21, 2019. A copy of the docket from the Lennar Action is attached as Exhibit "A."

A copy of the Judicial Default is attached as Exhibit "B." In the Default Judgment, the State Court stated: "The Court finds that Defendant Litestream Holdings, LLC ("Litestream") has willfully and contumaciously delayed the progress of this litigation since its inception." The State Court then lays out in extensive detail the basis for that finding, starting with Litestream's failure to timely respond to the complaint and belated motion to set aside the default, Litestream's failure to produce a corporate representative for deposition in defiance of court order, Litestream's failure to timely engage substitute counsel despite a court order, the repeated appearances and withdrawals of counsel, and Litestream's continuous and contumacious refusal to produce documents. In conclusion, the State Court stated:

> Litestream's willful delay and disregard for the rules of procedure and the Court's orders has impeded the Court's ability to bring this case to any resolution. Litestream has successfully delayed this case for nearly 15 months and has wasted the resources and time of this Court, Lennar, and counsel for Lennar. This Court has now set aside two default judgments against Litestream to afford them the opportunity to litigate the merits of this case. However, it is clear that Litestream

has no intention of litigating this case on its merits and intends to continue to exercise dilatory tactics to delay these proceedings and disrupt the administration of justice.

Accordingly, the State Court struck Litestream's pleadings, entered a judicial default, and set a hearing to determine damages. After hearing, on March 26, 2019, the State Court entered a Final Judgment in favor of Lennar against Litestream for $188,966.08, directed Litestream to complete a Fact Information Sheet pursuant to Fla. R. Civ. P. 1.977, and reserved jurisdiction to enter all orders necessary to carry out the judgment and the court's orders. A copy is attached as Exhibit "C."

Consistent with its history of contumacious and dilatory behavior, Litestream disregarded the State Court's order, and as a result, the State Court entered a further order holding Litestream in contempt of court, directing Rhodes as CEO to complete the Fact Information Sheet, and setting a show cause hearing if he failed to do so. A copy of that order is attached as Exhibit "D." When Litestream and Rhodes failed to comply and Rhodes failed to appear for the show cause hearing, the State Court issued a Writ of Bodily Attachment against Rhodes. *See* Exhibit "E."

Meanwhile, Lennar continued to pursue collection of its judgment, including obtaining writs of garnishment against banks holding funds for the benefit of Litestream, obtaining writs of garnishment against homeowners' associations which owed money to Litestream, and moving for the appointment of a receiver over Litestream. The State Court initially denied Litestream's motion for appointment of a receiver due to concern with a potential negative impact on customers unrelated to the litigation. On November 6, 2019, Lennar filed a motion to reconsider, asking the State Court to consider the more limited relief of appointing a receiver only with respect to payments made to Litestream by the Palencia North Homeowners Association. That motion was set for hearing November 27, 2019.

Litestream filed its Chapter 11 petition on November 23, 2019 before the receiver motion could be heard. (The State Court, after the petition was filed, entered an order – which Lennar acknowledges is ineffective due to the automatic stay – granting the motion to appoint receiver).

### 2. Litestream's Bankruptcy Filings

Litestream's petition was filed as a "bare bones" petition. On December 2, 2019, Litestream filed a motion to maintain existing bank accounts (ECF#6), a motion to use cash collateral (ECF#7), and a motion to continue utility services (ECF#8). On December 3, 2019, Litestream filed a Chapter 11 Case Management Summary, reflecting that the company owed approximately $1.1 million to secured lender Bank United, N.A. ("Bank United") and approximately $3.5 million to unsecured creditors, including Lennar. The Court has entered interim orders on the bank accounts motion (ECF#18) and cash collateral motion (ECF#32).[1]

Litestream's Application for employment of Chapter 11 counsel (ECF#16) and Disclosure of Compensation (ECF#30) reflect that the $27,000 retainer for retention of Litestream's Chapter 11 counsel was paid by the secured lender, Bank United, through an advance under its loan documents.

Litestream's Schedules and Statement of Financial Affairs were filed December 23, 2019 (ECF#29). A copy is attached as Exhibit "F." In Schedule E/F, Litestream's schedules include an unsecured claim on behalf of Rhodes in an amount exceeding $1.8 million, representing more than half of the total $3.5 million of scheduled unsecured claims. Several of the other unsecured claims, like Lennar's, appear to have been incurred in 2017 and 2018, if not earlier. Lennar's claim is

---

[1] The filings reflect that approximately $70,000 which was in a PNC Bank account garnished pre-petition by Lennar remains at that bank and is not being used as part of the cash collateral budget.

scheduled as "disputed" even though it is the subject of a final judgment from which no appeal was taken.

Litestream's Schedule H lists Cable Bahamas Ltd. and Summit Broadband, Inc. as co-debtors on the obligation owed to Bank United and does not list any other person or entity as a co-debtor. In Question 4 of the Statement of Financial Affairs, which requires the debtor to list all "Payments or transfers of property made within 1 year before filing this case that benefited any insider," Litestream responded "None."

On January 3, 2020, the U.S. Trustee's office gave notice of the appointment of an Official Committee of Unsecured Creditors ("Committee") (ECF#34). The Committee has taken no action in the case, and nobody appeared on behalf of the Committee at Litestream's § 341 Meeting of Creditors.

### 3.    Rhodes' § 341 Meeting Testimony.

Rhodes appeared on behalf of Litestream at the § 341 Meeting of Creditors on January 7, 2020. The transcript is attached as Exhibit "G." Rhodes' § 341 Meeting testimony reflects that:

- Although the Schedules do not identify Rhodes as a co-debtor, and although it was not disclosed in the cash collateral motion or any other bankruptcy filings, Rhodes individually has personally guaranteed the Bank United debt. (Transcript P50 L23 – P51 L25).

- The decision to put Litestream into Chapter 11 was made by Bank United, the secured lender, which preferred that the company's remaining assets be sold through a Chapter 11 case.[2] (Transcript P7 L25 – P8 L4: "The bank, BankUnited,

---

[2] According to Rhodes, a substantial portion of Litestream's assets were sold approximately one year prior to the bankruptcy filing for approximately $6 million, with all of the proceeds going to Bank United.

suggested that the most expeditious way to sell the business would be to put it in bankruptcy and have a 363 sale, and so prompted by some discussions with the bank, we chose this as an expeditious way to sell this small business"; Transcript P34 L9-13: "You know the dynamics of this – you know, the bank pitched the bankruptcy sale as something that's both more expeditious, and where you could get healthy bidding underway. I realize it's a distressed environment as well.").[3]

- Rhodes is the sole manager of Litestream, and owns 99% of its membership interests, with the remaining 1% owned by Rhodes Holdings, Inc., an entity solely owned by Rhodes individually. (Transcript P8 L6-13).

- Although the Statement of Financial Affairs represented that there were no payments or transfers to insiders within the year prior to bankruptcy, Litestream's banking records reflect that in one month alone (January 2019), there were in excess of $130,000 in transfers by Litestream to Rhodes Holdings, Inc. (Transcript P46 L4 – P48 L22).

- When asked how much in total was transferred by Litestream to Rhodes or Rhodes Holdings, Inc. during the year prior to bankruptcy, Rhodes testified, "I wouldn't think it's much more than that …" (Transcript P46 L19). In fact, post-judgment discovery obtained in the Lennar Action reflects that in just one of Litestream's accounts, more than $250,000 was transferred to insider Rhodes Holdings, Inc. during the one year prior to bankruptcy – almost double the amount reflected in the one bank statement.

---

[3] As noted above, Bank United also paid Litestream's bankruptcy counsel's retainer, through an advance on its line.

That post-judgment discovery reflects that during the two years prior to bankruptcy – over the same time period that Litestream was contumaciously delaying Lennar in obtaining and collecting on its judgment, and apparently failing to pay several other unsecured creditors as well – more than *$700,000* was transferred to insider Rhodes Holdings, Inc.

## **DISCUSSION**

The appointment of a trustee in Chapter 11 cases is governed by Section 1104, which provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court *shall* order the appointment of a trustee–
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(emphasis added). The plain language of section 1104(a)(1) (and specifically, the use of the word "*shall*"), indicates that this Court has no discretion to look past a finding of "cause" in ordering the appointment of a trustee. *See, In re SunCruz Casinos, LLC*, 298 B.R. 821, 828-29 (Bankr. S.D. Fla. 2003) ("Once the court finds that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed."), citing *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988); *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved "cause," which the statute defines to include incompetence and gross mismanagement.").

7

The statutory description of what may constitute "cause" is non-exclusive, and can also include consideration of the materiality of the misconduct, the evenhandedness or lack thereof in dealings with insiders versus other entities, the existence of pre-petition voidable transfers, the unwillingness or inability of current management to pursue estate causes of action, conflicts of interest, and self-dealing, waste or squandering of corporate assets. *See In re Intercat, Inc.*, 247 B.R. 911, 920-21 (Bankr. S.D. Ga. 2000) (finding "cause" where management's misconduct resulted in creditor's judgment, principal's payment to himself of compensation, expenses and royalties constituted mismanagement, and management engaged in prepetition dishonest or incompetent conduct to detriment of creditors). Even in the absence of any fraud, dishonesty, incompetence or gross mismanagement, existing management's conflicts of interest which interfere with the ability to fulfill the fiduciary duties of a debtor in possession can constitute cause for the appointment of a trustee. *SunCruz*, 298 B.R. at 830-31, citing *In re Cajun Elec. Power Coop., Inc.*, 74 F.3d 599 (5th Cir. 1996).

Section 1104(a)(2) of the Bankruptcy Code provides an additional basis for the appointment of a chapter 11 trustee. Courts have construed Section 1104(a)(2) to provide for a "flexible standard." *See, e.g., Sharon Steel*, 871 F.2d at 1226; *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990). Section 1104(a)(2) emphasizes the court's discretion, allowing it to appoint a trustee when to do so would serve the parties' and the estates' interest." *Id*.

It is axiomatic that a debtor in possession is a fiduciary. As a fiduciary, the debtor in possession does not act in its own interest but, like a trustee, must act in the best interest of the creditors of the estate. *Commodity Futures Trading Comm. v. Weintraub*, 47 U.S. 343, 354-55 (1985). In determining if a debtor in possession is complying with its fiduciary duties, courts

should be cognizant of the fact that "section 1104 represents a protection that the court should not lightly disregard or encumber with overly protective attitudes toward debtors-in-possession." *In re V. Savino Oil & Heating Co., Inc*., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). A decision under § 1104(a)(2) is similarly driven by considerations of existing management's ability and intention to fulfill the fiduciary duties of a debtor in possession to all of the estate's creditors. *See, e.g.*, *In re Celeritas Techs., LLC*, 446 B.R. 514, 520 (Bankr. D. Kan. 2011) ("As with the analysis of cause under § 1104(a)(1), the debtor's ability to fulfill its duty of care to protect the assets, its duty of loyalty, and its duty of impartiality is at the base.").

Courts have considered the following factors in determining whether the appointment of a trustee is in the best interest of the parties under Section 1104(a)(2): (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *See In re Cajun Elec. Power Co-Op, Inc*., 1991 B.R. 659 661-62 (M.D.La, 1995) *aff'd* 74 F3d 599 (5th Cir.), *cert. denied*, 117 S.Ct, 51 (1996); *accord in re Ionosphere Clubs, Inc*., 113 B.R. at 168; *Celeritas*, 446 B.R. at 520-21.

Here, "cause" exists for the appointment of a Trustee. Litestream's management – Rhodes, as the sole manager, sole owner, and guarantor of its secured debt – has engaged in fraud, dishonesty, incompetence and gross mismanagement by contumaciously delaying the entry of judgment in the Lennar Action and collection on that judgment while repeatedly violating court orders, all while Litestream was paying hundreds of thousands of dollars to insider Rhodes Holdings, Inc. Litestream has compounded that "cause" through repeated misstatements and omissions in its bankruptcy schedules, all of which served to conceal and obfuscate Litestream's

insider transactions for the benefit of Rhodes. Moreover, Rhodes' testimony at the § 341 Meeting reflects that he has effectively ceded control of the company to its secured creditor Bank United, which funded the retainer for Litestream's counsel and, according to Rhodes, made the decision that Litestream should file Chapter 11 in order to complete a sale of its remaining assets.

The conduct of Litestream, and Rhodes as its sole manager, constitutes "cause" which *mandates* the appointment of a trustee under 11 U.S.C. § 1104(a)(1). Alternatively, under the "interests of creditors" standard of 11 U.S.C. § 1104(a)(2), the Court should appoint a Chapter 11 Trustee to ensure that a genuinely neutral fiduciary fulfills the Debtor's duties and obligations under the Bankruptcy Code in this case. There appears to be little in the way of active business operations to continue to manage, and a Chapter 11 trustee could do so equally as effectively as Rhodes, while also fulfilling the obligation to maximize value of Litestream's assets for all creditors rather than just the secured lender, including potential claims against Rhodes and Rhodes Holdings, Inc. The cash collateral motions and orders filed with this Court do not contain any provisions that provide for a default or termination upon the appointment of a trustee, so there should be no disruption in Litestream's ongoing business operations.

Creditors should not have to rely on Rhodes, who has already demonstrated his contumacious disregard for court orders, who has filed false Schedules and Statement of Financial Affairs, who has pilfered hundreds of thousands of dollars for his own benefit while creditors went unpaid, and who is hopelessly conflicted as a result of his personal guarantee to the secured creditors, his relinquishment of managerial responsibility to his secured creditor, and his exposure to Litestream's estate for substantial avoidable transfers, to fulfill the fiduciary duties of a debtor in possession in this case.

**WHEREFORE**, Lennar requests that the Court enter an order directing the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) and (2), and grant Lennar such further relief as the Court deems appropriate.

KOZYAK TROPIN & THROCKMORTON, LLP
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel:    (305) 372-1800
Fax:    (305) 372-3508


By:      */s/ David L. Rosendorf*
         David L. Rosendorf
         FL Bar No. 996823

*Counsel for Lennar Homes, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case on this 5th day of February, 2020.


By:      */s/ David L. Rosendorf*
         David L. Rosendorf

# EXHIBIT A

**CA17-1181 - LENNAR HOMES, LLC vs. LITESTREAM HOLDINGS, LLC**

## SUMMARY

| | | |
|---|---|---|
| **Judge:** SMITH, R. LEE | **Case Type:** Contr And Indeb | **Status:** CLOSED |
| **Case Number:** CA17-1181 | **Uniform Case Number:** 552017CA001181A000XX | |
| **Clerk File Date:** 10/19/2017 | **Status Date:** 3/26/2019 | |
| **SAO Case Number:** | **Total Fees Due:** 0.00 | |
| **Agency:** | **Agency Report #:** | **Custody Location:** |

## PARTIES

| TYPE | PARTY NAME | ATTORNEY |
|---|---|---|
| PLAINTIFF | LENNAR HOMES, LLC | JARMAN, TAYLOR D (Main Attorney) / ORR, MICHAEL FOX |
| DEFENDANT | LITESTREAM HOLDINGS, LLC | |
| DEFENDANT | PNC BANK NA | PRUITT, WILLIAM E (Deactivated: 5/3/2019) |

## EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT |
|---|---|---|---|---|
| 11/27/2019 9:30 AM | HEARING (CIVIL) | SMITH, R. LEE | Chambers | COMPLETED |
| 7/30/2019 8:45 AM | HEARING (CIVIL) | SMITH, R. LEE | Chambers | COMPLETED |
| 7/2/2019 2:00 PM | HEARING (CIVIL) | SMITH, R. LEE | Chambers | COMPLETED |
| 3/26/2019 8:30 AM | NON-JURY TRIAL (CIVIL) | SMITH, R. LEE | Courtroom 316 | COMPLETED |
| 2/21/2019 9:30 AM | NON-JURY TRIAL (CIVIL) | SMITH, R. LEE | Courtroom 316 | COMPLETED |
| 2/11/2019 1:30 PM | CIVIL DOCKET SOUNDING | SMITH, R. LEE | Courtroom 316 | COMPLETED |
| 2/1/2019 9:30 AM | HEARING (CIVIL) | SMITH, R. LEE | Chambers | COMPLETED |
| 1/8/2019 10:30 AM | HEARING (CIVIL) | SMITH, R. LEE | Chambers | COMPLETED |
| 9/4/2018 8:45 AM | HEARING (CIVIL) | TRAYNOR, J MICHAEL | Chambers | COMPLETED |

## CASE HISTORY

| CASE NUMBER | CHARGE DESCRIPTION | CASE STATUS | DISPOSITION | OUTSTANDING AMOUNT | NEXT EVENT | ALERTS |
|---|---|---|---|---|---|---|
| | | | No Additional Cases | | | |

## CASE DOCKETS

| IMAGE | DIN | DATE | ENTRY |
|---|---|---|---|
| | 149 | 12/2/2019 | EMAIL SENT TO: KATY & JENN - REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: W227-11/27/2019 - SUGGESTION OF BANKRUPTCY |
| Request | 147 | 12/2/2019 | ORDER APPOINTING EQUITABLE RECEIVER |
| Request | 146 | 12/2/2019 | CIVIL COURT NOTES |
| Request | 148 | 11/27/2019 | SUGGESTION OF BANKRUPTCY |
| 2 | 141 | 11/14/2019 | PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF HEARING - NOVEMBER 27, 2019 @ 9:30 A.M. |
| 63 | 140 | 11/13/2019 | BANKUNITED, N.A'S MOTION TO INTERVENE AND TO DISSOLVE WRIT OF GARNISHMENT DIRECTED TO PMC BANK, N.A |
| 4 | 139 | 11/7/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR FINAL JUDGMENT IN GARNISHMENT AS TO PNC BANK |
| | 138 | 11/7/2019 | EMAIL SENT TO: JA - TRACI DAVIS -REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: W215-11/6/2019 - LENNAR HOMES' MOTION FOR RECONSIDERATION REGARDING MOTION FOR THE APPOINTMENT OF AN EQUITABLE RECEIVER |
| 3 | 137 | 11/6/2019 | LENNAR HOMES' MOTION FOR RECONSIDERATION REGARDING MOTION FOR THE APPOINTMENT OF AN EQUITABLE RECEIVER |
| 55 | 136 | 11/4/2019 | AFFIDAVIT OF BANKUNITED, N.A. PURSUANT TO FLA. STAT 77.16 |
| 61 | 135 | 11/4/2019 | BANKUNITED, N.A.'S MOTION TO INTERVENE AND TO DISSOLVE WRITS OF GARNISHMENT |
| 5 | 134 | 10/31/2019 | ANSWER OF GARNISHEE, SUMMIT BOARDBAND, INC. TO PLAINTIFF'S WRIT OF GARNISHMENR |
| 4 | 133 | 10/24/2019 | SUBPOENA DUCES TECUM FOR DEPOSITION IN AID OF EXECUTION |
| 1 | 132 | 10/23/2019 | WRIT OF GARNISHMENT SERVED ON 10/16/2019 ON SUMMIT BOARDBAND INC. TO CINDY HEREDIA |
| 2 | 131 | 10/23/2019 | LENNAR HOMES, LLC'S NOTICE OF FILING VERIFIED RETURN OF SERVICE OF WRIT OF GARNISHMENT TO SUBMIT BROADBAND INC. |
| | 130 | 10/22/2019 | EMAIL SENT TO: JARMAN, TAYLOR D REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 3 ATTACHMENTS FROM DOCKET: WRITS OF GARNISHMENT-10/22/2019 |
| 2 | 125 | 10/22/2019 | WRIT OF GARNISHMENT / THR CROSSINGS AT GLEN ST. JOHNS HOMEOWNERS ASSOCIATION INC |
| 2 | 123 | 10/22/2019 | WRIT OF GARNISHMENT / GLEN ST. JOHNS HOMEOWNERS ASSOCIATION INC |
| 2 | 121 | 10/22/2019 | WRIT OF GARNISHMENT / PALENCIA PROPERTY OWNERS ASSOCIATION OF ST. JOHNS COUNTY INC |
| | 129 | 10/22/2019 | EMAIL SENT TO: ORR, MICHAEL FOX; JARMAN, TAYLOR D; LITESTREAM HOLDINGS, LLC REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: ORDER GRANTING LENNAR HOMES, LLC'S MOTION FOR ORDER REQUIRING BDO USA, LLP TO PRODUCE RECORDS PURSUANT TO SUBPOENA DUCES TECUM-10/22/2019 |

| IMAGE | DIN | DATE | ENTRY |
|---|---|---|---|
| 📄 2 | 127 | 10/22/2019 | ORDER GRANTING LENNAR HOMES, LLC'S MOTION FOR ORDER REQUIRING BDO USA, LLP TO PRODUCE RECORDS PURSUANT TO SUBPOENA DUCES TECUM |
| Request | 128 | 10/21/2019 | PAYMENT $255.00 RECEIPT #2019035590 |
| 📄 2 | 124 | 10/18/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR WRIT OF GARNISHMENT |
| 📄 2 | 122 | 10/18/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR WRIT OF GARNISHMENT |
| 📄 2 | 120 | 10/18/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR WRIT OF GARNISHMENT |
| 📄 1 | 119 | 10/15/2019 | PAYMENT $85.00 RECEIPT #2019034894 |
| | 118 | 10/14/2019 | EMAIL SENT TO: ORR, MICHAEL FOX REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: WRIT OF GARNISHMENT-10/14/2019 |
| 📄 2 | 117 | 10/14/2019 | WRIT OF GARNISHMENT |
| 📄 2 | 116 | 10/11/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR WRIT OF GARNISHMENT |
| 📄 3 | 115 | 10/10/2019 | LENNAR HOMES, LLC'S MOTION FOR ORDER REQUIRING BDO USA, LLP TO PRODUCE RECORDS PURSUANT TO SUBPOENA DUCES TECUM |
| 📄 2 | 114 | 9/26/2019 | PLAINTIFF, LENNAR HOMES' CERTIFICATE OF NO OBJECTION REGARDING FIRST AND SECOND NOTICES OF PRODUCTION FROM NON-PARTIES |
| 📄 2 | 113 | 9/24/2019 | EVIDENCE DISPOSITION SHEET (PURSUANT TO F.R.J.A. 2.430) |
| 📄 3 | 112 | 9/18/2019 | ORDER DENYING PLAINTIFF'S MOTION FOR THE APPOINTMENT OF AN EQUITABLE RECEIVER |
| Request | 111 | 9/5/2019 | PLAINTIFF, LENNAR HOMES' SECOND NOTICE OF PRODUCTION FROM NON-PARTIES IN AID OF EXECUTION |
| 📄 4 | 110 | 8/29/2019 | SUBPOENA DUCES TECUM FOR DEPOSITION IN AID OF EXECUTION |
| 📄 4 | 109 | 8/29/2019 | AMENDED SUBPOENA DUCES TECUM FOR DEPOSITION IN AID OF EXECUTION (AS TO LOCATION ONLY) |
| 📄 8 | 108 | 8/29/2019 | PLAINTIFF, LENNAR HOMES' FIRST NOTICE OF PRODUCTION FROM NON-PARTIES IN AID OF EXECUTION |
| | 106 | 7/30/2019 | EMAIL SENT TO: ORR, MICHAEL FOX; JARMAN, TAYLOR D; LITESTREAM HOLDINGS, LLC REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: WRIT OF BODILY ATTACHMENT-7/30/2019 |
| | 104 | 7/30/2019 | EMAIL SENT TO: JARMAN, TAYLOR D REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC WITH 1 ATTACHMENTS FROM DOCKET: NOTICE OF INTENT TO DISPOSE OF OR DESTROY EXHIBITS-7/30/2019 |
| Request | 103 | 7/30/2019 | NOTICE OF INTENT TO DISPOSE OF OR DESTROY EXHIBITS |
| 📄 1 | 102 | 7/30/2019 | CIVIL COURT NOTES |
| Request | 101 | 7/22/2019 | PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF HEARING - JULY 30, 2019 @ 8:45 A.M. |
| 📄 5 | 100 | 7/22/2019 | LENNAR HOMES' MOTION FOR THE APPOINTMENT OF AN EQUITABLE RECEIVER |
| | 99 | 7/12/2019 | EMAIL SENT TO: JARMAN, TAYLOR D; RHODES, PAUL REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: W150-7/12/2019 |
| 📄 2 | 98 | 7/12/2019 | ORDER COMPELLING LITESTREAM AND PAUL RHODES TO COMPLETE THE RULE 1.077 FACT INFORMATION SHEET - HEARING JULY 30, 2019 AT 8:45AM |
| Request | 96 | 7/1/2019 | PLAINTIFF'S AMENDED DESIGNATION OF ELECTRONIC MAIL ADDRESSES |
| Request | 95 | 7/1/2019 | NOTICE OF CHANGE OF FIRM NAME |
| Request | 94 | 6/26/2019 | PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF HEARING - JULY 2, 2019 AT 2:00PM |
| Request | 93 | 6/21/2019 | LENNAR HOMES' MOTION TO COMPEL LITESTREAM HOLDINGS TO COMPLETE THE FACT INFORMATION SHEET AND FOR THE IMPOSITION OF SANCTIONS |
| 📄 3 | 92 | 5/20/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR FINAL JUDGMENT IN GARNISHMENT AS TO PNC BANK |
| 📄 3 | 91 | 4/2/2019 | ANSWER OF GARNISHEE AND DEMAND FOR PAYMENT PURSUANT TO FLORIDA STATUTE 77.28 |
| | 90 | 4/2/2019 | ATTORNEY: PRUITT, WILLIAM E ASSIGNED TO PNC BANK NA |
| Request | 88 | 3/28/2019 | PAYMENT $85.00 RECEIPT #2019011168 |
| | 87 | 3/28/2019 | GARNISHMENT FEE ASSESSED $85.00 |
| 📄 2 | 86 | 3/28/2019 | WRIT OF GARNISHMENT |
| Request | 85 | 3/28/2019 | PLAINTIFF, LENNAR HOMES' MOTION FOR WRIT OF GARNISHMENT |
| 📄 5 | 89 | 3/26/2019 | FINAL JUDGMENT - Recorded (OR.4699.1276 / 2019020525) |
| | 84 | 3/26/2019 | CASE CLOSED |
| 📄 5 | 83 | 3/26/2019 | FINAL JUDGMENT |
| Request | 82 | 3/26/2019 | PLAINTIFF EXHIBIT 1: CONTRACT |
| Request | 81 | 3/26/2019 | PLAINTIFFS EXHIBIT CONTROL LIST |
| Request | 80 | 3/26/2019 | CIVIL COURT NOTES |
| | 79 | 2/21/2019 | EMAIL SENT TO: JARMAN, TAYLOR D; ORR, MICHAEL FOX REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 2 ATTACHMENTS FROM DOCKET: ORDER SETTING NON-JURY TRIAL ON ISSUES OF DAMAGES, COSTS AND ATTORNEYS FEES-2/21/2019,JUDICIAL DEFAULT-2/21/2019 |
| 📄 1 | 78 | 2/21/2019 | ORDER SETTING NON-JURY TRIAL ON ISSUES OF DAMAGES, COSTS AND ATTORNEYS' FEES |
| 📄 2 | 77 | 2/21/2019 | NOTICE TO SET CASE FOR NON-JURY TRIAL ON DAMAGES, ATTORNEY'S FEES, COSTS, AND ALL FURTHER RELIEF THAT IS JUST AND PROPER UNDER THE CIRCUMSTANCES |
| 📄 5 | 76 | 2/21/2019 | JUDICIAL DEFAULT |
| 📄 1 | 75 | 2/21/2019 | CIVIL COURT NOTES |
| Request | 72 | 2/15/2019 | ORDER SCHEDULING HEARING - FEBRUARY 21, 2019 AT 9:30AM |
| Request | 73 | 2/13/2019 | PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF EVIDENTIARY HEARING ON DAMAGES - FEBRUARY 21, 2019 @ 9:00 A.M. |
| 📄 1 | 71 | 2/12/2019 | CIVIL COURT NOTES |
| Request | 70 | 2/11/2019 | PLAINTIFF LENNAR HOMES, LLC'S AMENDED NOTICE OF HEARING - FEBRUARY 11, 2019 AT 1:30PM |

| IMAGE | DIN | DATE | ENTRY |
|---|---|---|---|
| | 69 | 2/6/2019 | EMAILED SENT TO: JA - TRACI DAVIS - REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: W219-2/5/2019 - PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF HEARING - FEBRUARY 11, 2019 @ 1:00 P.M. / HEARING NOT IN THE COMPUTER |
| Request | 68 | 2/5/2019 | PLAINTIFF LENNAR HOMES, LLC'S NOTICE OF HEARING - FEBRUARY 11, 2019 @ 1:00 P.M. |
| Request | 67 | 2/1/2019 | PRINTED EMAIL SHOWING PROOF OF SERVICE FILED BEFORE THE COURT |
| 2 | 66 | 2/1/2019 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL |
| 2 | 65 | 2/1/2019 | CIVIL COURT NOTES |
| Request | 64 | 1/24/2019 | LENNAR HOMES' RENEWED MOTION FOR FINAL DEFAULT JUDGMENT |
| Request | 63 | 1/24/2019 | NOTICE OF HEARING - FEBRUARY 1, 2019 AT 9:30 A.M. |
| | 62 | 1/16/2019 | EMAIL SENT TO: ANSBACHER, BARRY BARNETT; ROUSSEAU, DAVARIAN T; JARMAN, TAYLOR D REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: W150-1/15/2019 -ORDER ON DEFENDANT'S MOTION TO SET ASIDE CLERK'S DEFAULT AND PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT |
| 3 | 61 | 1/15/2019 | ORDER ON DEFENDANT'S MOTION TO SET ASIDE CLERK'S DEFAULT AND PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT |
| Request | 60 | 1/14/2019 | MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT LITESTREAM HOLDINGS, LLC |
| 1 | 59 | 1/8/2019 | CIVIL COURT NOTES |
| | 58 | 1/8/2019 | ATTORNEY: ERTL, CHRISTENE MIELE ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| | 57 | 1/7/2019 | JUDGE SMITH, R LEE: ASSIGNED |
| Request | 56 | 1/4/2019 | AFFIDAVIT OF SALLY LARSON |
| Request | 55 | 1/4/2019 | NOTICE OF FILING AFFIDAVIT |
| Request | 54 | 11/27/2018 | DEFENDANT'S CROSS - NOTICE OF HEARING - JANUARY 8, 2019 AT 10:30 A.M. |
| | 53 | 11/21/2018 | EMAIL SENT TO: ANSBACHER, BARRY BARNETT; WOZNIAK, ANDREW J; ROTH, ZACHARY RUSSELL; LITESTREAM HOLDINGS, LLC; TAYLOR JARMAN; MICHAEL FOX ORR REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: ORDER GRANTING WOOD, BUCKEL & CARMICHAEL, PLLC'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT, LITESTREAM HOLDINGS, LLC-11/21/2018 |
| Request | 51 | 11/21/2018 | ORDER GRANTING WOOD, BUCKEL & CARMICHAEL, PLLC'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT, LITESTREAM HOLDINGS, LLC |
| Request | 52 | 11/20/2018 | WOOD, BUCKLEY & CARMICHAEL, PLLC'S MOTION FOR LEAVE TO WITHDRAW AS ATTORNEY OF RECORD FOR DEFENDANT, ITESTREAM HOLDINGS, LLC |
| | 50 | 11/20/2018 | ATTORNEY: ROUSSEAU, DAVARIAN T. ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| | 49 | 11/20/2018 | ATTORNEY: ANSBACHER, BARRY BARNETT ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| | 48 | 11/6/2018 | ATTORNEY: ROTH, ZACHARY RUSSELL ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| Request | 47 | 11/5/2018 | NOTICE OF APPEARANCE AND DESIGNATION OF ELECTRONIC MAIL ADDRESSES FOR SERVICE |
| Request | 46 | 11/5/2018 | DEFENDANT, LITESTREAM HOLDINGS, LLC'S MOTION TO SET ASIDE CLERK'S DEFAULT |
| Request | 45 | 10/29/2018 | PLAINTIFF, LENNAR HOMES, LLC.'S NOTICE OF HEARING - JANUARY 8, 2019 @ 10:30 A.M. |
| Request | 44 | 10/26/2018 | LENNAR HOMES' MOTION FOR FINAL DEFAULT JUDGMENT AS TO DEFENDANT LITESTREAM HOLDINGS, LLC |
| | 43 | 10/5/2018 | ATTORNEY: WOZNIAK, ANDREW J ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| 2 | 42 | 10/4/2018 | NOTICE OF APPEARANCE |
| 2 | 41 | 10/4/2018 | DEFENDANT, LENNAR HOMES, LLC'S MOTION FOR CLERK'S DEFAULT |
| | 40 | 9/7/2018 | EMAIL SENT TO: JARMAN, TAYLOR D; ROTHMAN, BRADLEY, RHODES, PAUL REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: ORDER GRANTING MOTION TO COMPEL DEPOSIITON-9/7/2018 |
| 2 | 38 | 9/7/2018 | ORDER GRANTING MOTION TO COMPEL DEPOSITION |
| | 39 | 9/7/2018 | EMAIL SENT TO ROTHMAN, BRADLEY; RHODES, PAUL; JARMAN, TAYLOR; REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL-9/7/2018 |
| 2 | 37 | 9/7/2018 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL |
| 2 | 36 | 9/4/2018 | CIVIL COURT NOTES |
| | 35 | 9/4/2018 | ATTORNEY: ROTHMAN, BRADLEY P ASSIGNED TO LITESTREAM HOLDINGS, LLC |
| 2 | 34 | 8/20/2018 | PLAINTIFF, LENNAR HOMES, LLC'S AMENDED NOTICE OF HEARING - SEPTEMBER 4, 2018 AT 8:45 |
| 4 | 33 | 8/20/2018 | LENNAR HOMES' MOTION TO COMPEL LITESTREAM HOLDINGS TO PRODUCE CORPORATE REPRESENTATIVE FOR DEPOSITION |
| 2 | 32 | 8/7/2018 | PLAINTIFF, LENNAR HOMES, LLC,'S NOTICE OF HEARING - SEPTEMBER 4, 2018 @ 8:45 A.M. |
| | 31 | 7/18/2018 | EMAIL SENT TO: ROTHMAN, BRADLEY P REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: PROPOSED ORDER-7/11/2018 |
| 2 | 30 | 7/11/2018 | PLAINTIFF, LENNAR HOMES, LLC'S NOTICE OF DEPOSITION CANCELLATION OF CORPORATE REPRESENTATIVE OF DEFENDANT LITESTREAM HOLDINGS, LLC |
| 2 | 28 | 6/29/2018 | MOTION TO WITHDRAW AS COUNSEL |
| 2 | 27 | 6/18/2018 | DEFENDANT'S NOTICE OF SERVICE OF ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES |
| 6 | 26 | 6/18/2018 | DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS |
| 2 | 25 | 6/4/2018 | DEFENDANT'S SECOND MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS |
| 5 | 24 | 5/10/2018 | PLAINTIFF, LENNAR HOMES, LLC'S NOTICE OF TAKING VIDEOTAPED DEPOSITION DUCES TECUM OF CORPORATE REPRESENTATIVE OF DEFENDANT LITESTREAM HOLDINGS, LLC |
| 2 | 23 | 5/2/2018 | DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS |
| 6 | 22 | 4/3/2018 | PLAINTIFF LENNAR HOMES LLC'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT LITESTREAM HOLDINGS LLC |
| 2 | 21 | 4/3/2018 | PLAINTIFF LENNAR HOMES LLC'S NOTICE OF SERVING ITS FIRST SET OF INTERROGATORRIES TO DEFENDANT LITESTREAM HOLDINGS LLC |
| | 20 | 1/25/2018 | EMAIL SENT TO: JARMAN, TAYLOR D; ROTHMAN, BRADLEY P; ORR, MICHAEL REGARDING SERVICE OF COURT DOCUMENT - CA17-1181, LENNAR HOMES, LLC VS. LITESTREAM HOLDINGS, LLC WITH 1 ATTACHMENTS FROM DOCKET: AGREED ORDER TO SET ASIDE DEFAULT-1/24/2018 |
| 1 | 19 | 1/24/2018 | AGREED ORDER TO SET ASIDE DEFAULT |

| IMAGE | DIN | DATE | ENTRY |
|---|---|---|---|
| 9 | 18 | 12/11/2017 | DEFENDANT'S VERIFIED MOTION TO SET ASIDE DEFAULT // DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT |
| | 17 | 12/11/2017 | COULD NOT PARSE DOCKET CODE TEXT FOR DOCKETCODE = CIVILATTORNEY |
| Request | 16 | 12/11/2017 | NOTICE OF APPEARANCE OF COUNSEL AND DESIGNATION OF PRIMARY AND SECONDARY E-MAIL ADDRESSES |
| 2 | 15 | 11/27/2017 | DEFENDANT, LENNAR HOMES, LLC'S MOTION FOR CLERK'S DEFAULT / DEFAULT ENTERED AGAINST LITESTREAM HOLDINGS, LLC |
| 1 | 14 | 11/27/2017 | CORPORATE SUMMONS STATUS SET TO RETURNED SERVED ON 11/03/2017 - LITESTREAM HOLDINGS LLC |
| 2 | 13 | 11/27/2017 | PLAINTIFF, LENNAR HOMES, LLC'S NOTICE OF FILING RETURN OF SERVICE |
| Request | 12 | 10/23/2017 | PAYMENT $410.00 RECEIPT #2017035183 |
| 1 | 9 | 10/20/2017 | ORDER UPON FILING |
| 2 | 7 | 10/20/2017 | CORPORATE SUMMONS STATUS SET TO SUMMONS ISSUED ON 10/20/2017 FOR LITESTREAM HOLDINGS LLC |
| | 3 | 10/20/2017 | ATTORNEY: JARMAN, TAYLOR D ASSIGNED TO LENNAR HOMES, LLC |
| | 2 | 10/20/2017 | JUDGE TRAYNOR, J MICHAEL: ASSIGNED |
| | 11 | 10/19/2017 | CA/DR SUMMONS ASSESSED $10.00 |
| | 10 | 10/19/2017 | CONTRACT AND INDEBTNESS ASSESSED $400.00 |
| Request | 4 | 10/19/2017 | CIVIL COVER SHEET |
| 48 | 5 | 10/19/2017 | COMPLAINT |
| | 1 | 10/19/2017 | CASE FILED 10/19/2017 CASE NUMBER CA17-1181 |

/

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR ST. JOHNS COUNTY, FLORIDA

CASE NO: CA17-1181

LENNAR HOMES, LLC,
a Florida Limited Liability Company,

                    Plaintiff,

v.

LITESTREAM HOLDINGS, LLC,
a Florida Limited Liability Company,

                    Defendant.
_____/

### **JUDICIAL DEFAULT**

        This CAUSE came before the Court on February 21, 2019 on Plaintiff, Lennar Homes,

LLC's ("Lennar") Renewed Motion for Final Default Judgment filed on January 24, 2019. As the

docket shows, the case has been pending for nearly 15 months and has made no progress towards

resolution. The Court finds that Defendant Litestream Holdings, LLC ("Litestream") has willfully

and contumaciously delayed the progress of this litigation since its inception.

        Lennar filed its Complaint on October 19, 2017. The docket shows Litestream was served

on November 3, 2017. Litestream disregarded the summons and failed to make an appearance.

Lennar thereafter filed a motion for clerk's default on November 27, 2017, and a clerk's default

was entered. Litestream appeared two-weeks later on December 11, 2017 and moved to set aside

the clerk's default. Lennar agreed to an order setting aside the default and the Court entered the

same on January 24, 2018.

        Lennar served Litestream on its first set of Interrogatories and request for production on

April 3, 2018. Litestream filed two requests for extensions to respond to these requests and finally provided responses to both on June 18, 2018. These responses were immediately followed by a Motion to Withdrawal as Counsel filed by Litestream's then attorney of record. Lennar then filed a motion to compel the deposition of Litestream's corporate representative. On September 7, 2018, the Court granted the motion and ordered Litestream to produce a corporate representative for deposition within 45 days. Litestream disregarded that Order and to this date has refused to produce a corporate representative for deposition.

Also on September 7, 2018, the Court granted the motion to withdraw and ordered Litestream to retain new counsel within 20 days. The Court further ordered that if Litestream failed to retain counsel, its pleadings would be deemed stricken. No attorneys made an appearance within 20 days as ordered and Lennar filed a second motion for default 27 days after the Court's order on the motion to withdraw. On October 4, 2018, a second clerk's default was entered against Litestream. On that same day, a new attorney filed a notice of appearance on behalf of Litestream. On October 26, Lennar again moved for a default against Litestream and the noticed it for hearing on January 8, 2019. On November 5, 2018, a third attorney filed a notice of appearance on behalf of Litestream and several weeks later, on November 20, 2018, Litestream's second attorney of record filed a motion to withdraw. The Court granted that motion the following day. Litestream then filed a motion to vacate the clerk's default and cross-noticed their motion for January 8, 2019. At the January 8 hearing, the Court expressed serious concern with Litestream's dilatory tactics and disregard for the Court's prior orders. However, at the representation of Litestream's counsel that they would ensure Litestream's participation and cooperation moving forward and desiring to give Litestream a final chance to try the case on the merits, the Court granted their motion and again vacated the clerk's default.

At the January 8 hearing, Litestream's counsel relayed that she had good communication with Litestream and they would comply with this Court's orders. At that hearing, this Court ordered Litestream to (1) identify a corporate representative within 5 days of the January 8 hearing; (2) schedule the corporate representative deposition within 15 days of the hearing; and (3) conduct the deposition within 60 days of the hearing. This Court followed up its oral pronouncement with a signed a written order on January 15, 2019.

On January 14, 2019, Litestream's third attorney moved to withdraw citing irreconcilable differences with their client. That motion was granted at a hearing on February 1, 2019. Again attempting to provide Litestream a fair opportunity to litigate this case on its merits, this Court provided Litestream 14 days to retain new counsel and to file their notice of appearance. As of today, no additional attorneys have filed a notice of appearance on behalf of Litestream. This Court notes that it is the actions of Litestream that has resulted in this revolving door of attorneys appearing on their behalf and not the actions of the attorneys themselves. Additionally, Litestream has contumaciously disregarded this Court's order on January 8th by failing to identify a corporate representative within 5 days, failing to schedule the deposition within 15 days and failing conduct the deposition of the corporate representative. Litestream has now violated multiple orders of this Court. Moreover, counsel for Lennar represented it has attempted on numerous occasions to obtain the documents responsive to its discovery requests. However, Litestream has continuously and contumaciously refused to produce any documents.

On January 24, 2019, Plaintiff Lennar Homes again moved for Final Default.

The Court is cognizant of Rule 2.545, Florida Rules of Judicial Administration which provides:

> **(a) Purpose**. Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to

do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case.

**(b) Case Control**. The trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case thereafter until the case is determined. The trial judge shall take specific steps to monitor and control the pace of litigation . . . .

This Court is also cognizant of the short time standards for the completion of cases prescribed by Rule, 2.250, Florida Rules of Judicial Administration.  This case is now only three months away from the 18-month time standard for civil jury cases.  Litestream's willful delay and disregard for the rules of procedure and the Court's orders has impeded the Court's ability to bring this case to any resolution.  Litestream has successfully delayed this case for nearly 15 months and has wasted the resources and time of this Court, Lennar, and counsel for Lennar.  This Court has now set aside two default judgments against Litestream to afford them the opportunity to litigate the merits of this case. However, it is clear to this Court that Litestream has no intention of litigating this case on its merits and intends to continue to exercise dilatory tactics to delay these proceedings and disrupt the administration of justice. The Court recognizes that striking of pleadings and judgment by default is an extreme action but it finds the willful and contumacious conduct of Litestream necessitates this result.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1.      Pursuant to Rule 1.380(b)(2)(C), Florida Rules of Civil Procedure, as sanctions for failing to obey this court's multiple orders and for failure to permit discovery, Defendant Litestream Holdings, LLC's pleadings are stricken and a judicial default is hereby entered in favor of Plaintiff, Lennar Homes, LLC.  See Levine v. Del Am. Properties, 642 So. 2d 32 (Fla. 5th DCA 1994).

2.     The court, by separate order, will schedule a final hearing as to damages, costs and attorney's fees on March 26, 2019 at 8:30 a.m.

DONE and ORDERED in Chambers, St. Johns County, Florida, this 21st day of February 2019.

Honorable R. Lee Smith
Circuit Judge

Copies to:
Michael Orr, Esquire on behalf of Lennar Homes, LLC
Litestream Holdings, LLC
c/o Paul Rhodes
500 Australian Ave. S., Ste. 648
West Palm Beach, FL 33401
E-Mail: prhodes@litestream.net

# EXHIBIT C

Instr #2019020525 BK: 4699 PG: 1276, Filed & Recorded: 3/26/2019 3:56 PM #Pgs:5
Hunter S. Conrad, Clerk of the Circuit Court & Comptroller St. Johns County, FL

Case 19-26048-MAM Doc 48    Filed 02/05/20    Page 24 of 100

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR ST. JOHNS COUNTY, FLORIDA

CASE NO: CA17-1181

LENNAR HOMES, LLC,
a Florida Limited Liability Company,

                Plaintiff,

v.

LITESTREAM HOLDINGS, LLC,
a Florida Limited Liability Company,

                Defendant.

_____/

## **FINAL JUDGMENT**

      Pursuant the Judicial Default entered on February 21, 2019 and the testimony and evidence presented at the trial on damages held on March 26, 2019, **IT IS HEREBY ADJUDGED** that:

      **FINAL JUDGMENT** is hereby entered in favor of Plaintiff, Lennar Homes, LLC ("Lennar") and against Litestream Holdings, LLC ("Litestream"). Based on the testimony and evidence submitted during the trial, the Court finds that Lennar shall recover $149,272.25 in damages from Litestream together with prejudgment interest in the amount of $8,216.36. The Court finds this amount reasonable based on the number of homes currently receiving service from Litestream and the amount those individuals are paying for basic service ($111,206.25) and additional services ($38,066). Additionally, the Court received testimony related to the issue of fees and costs from Michael Orr, Esquire and expert testimony from William Cooper, Esquire. Based on that testimony, Lennar shall also recover its attorney's fees in the amount of $30,975.00 plus costs in the amount of $492.47, totaling $31,467.47. The Court finds these amounts

reasonable and necessary based upon the evidence presented. These sums, totaling $188,966.08, shall bear interest at the statutory rate from the date of this final judgment, for which let execution issue.

Due to Defendant's continued contumacious disregard for this Court's Order and unwillingness to provide requested discovery, this Court reserves jurisdiction to amend this Final Judgment in the future to add additional sums owed and not yet disclosed by the Defendant.

It is further ordered and adjudged that Litestream shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet, attached hereto as Exhibit "A"), including all required attachments, and serve it on the Lennar's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

Jurisdiction of this case is retained to enter further orders, and any other relief that is proper, including but not limited to, orders to compel Litestream to complete form 1.977, including all required attachments, orders to compel Litestream's participation in post-judgment discovery, and any orders to necessary to carry out this judgment and the Court's orders.

**ORDERED AND ADJUDGED** in Chambers, St. Johns County, Florida, this 26ᵗʰ day of March 2019.

Honorable R. Lee Smith
Circuit Judge

cc:     Counsel for Lennar
Litestream Holdings, LLC (via email and USPS certified mail)
c/o Paul Rhodes
500 Australian Ave. S., Ste. 648
West Palm Beach, FL 33401
E-Mail: prhodes@litestream.net

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR ST. JOHNS COUNTY, FLORIDA

CASE NO: CA17-1181

LENNAR HOMES, LLC,
a Florida Limited Liability Company,

                    Plaintiff,

v.

LITESTREAM HOLDINGS, LLC,
a Florida Limited Liability Company,

                    Defendant.
_____/

## **FORM 1.977. FACT INFORMATION SHEET**

Name of entity: _____
Telephone number: _____
Place of business:_____
Mailing address (if different):_____
Gross/taxable income reported for federal income tax purposes last three years:
_____
Taxpayer identification number:_____
Is this entity an S corporation for federal income tax purposes? Yes No
Average number of employees per month: _____
Name of each shareholder, member, or partner owning 5% or more of the entity's common
stock, preferred stock, or other equity interest:
_____
_____
Names of officers, directors, members, or partners:
_____
_____
Checking account at: _____ Account # _____
Savings account at: _____ Account # _____
Does the entity own any vehicles? Yes No
For each vehicle please state:
Year/Make/Model: _____
Color:_____
Vehicle ID No: Tag No: Mileage: _____
Names on Title: _____

BK: 4699 PG: 1279

Present Value: _____

Loan Owed to: _____

Balance on Loan: _____

Monthly Payment: _____

Does the entity own any real property? Yes No

If yes, please state the address(es): _____

Please check if the entity owns the following

Boat _____

Camper _____

Stocks/bonds _____

Other real property _____

Other personal property _____

Please attach copies of the following:

1. Copies of state and federal income tax returns for the past 3 years.

2. All bank, savings and loan, and other account books and statements for accounts in institutions in which the entity had any legal or equitable interest for the past 3 years.

3. All canceled checks for the 12 months immediately preceding the service date of this Fact Information Sheet for accounts in which the entity held any legal or equitable interest.

4. All deeds, leases, mortgages, or other written instruments evidencing any interest in or ownership of real property at any time within the 12 months immediately preceding the date this lawsuit was filed.

5. Bills of sale or other written evidence of the gift, sale, purchase, or other transfer of any personal or real property to or from the entity within the 12 months immediately preceding the date this lawsuit was filed.

6. Motor vehicle or vessel documents, including titles and registrations relating to any motor vehicles or vessels owned by the entity alone or with others.

7. Financial statements as to the entity's assets, liabilities, and owner's equity prepared within the 12 months immediately preceding the service date of this Fact Information Sheet.

8. Minutes of all meetings of the entity's members, partners, shareholders, or board of directors held within 2 years of the service date of this Fact Information Sheet.

9. Resolutions of the entity's members, partners, shareholders, or board of directors passed within 2 years of the service date of this Fact Information Sheet.

BK: 4699 PG: 1280

**UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.**

_____
Judgment Debtor's Designated
Representative/Title

STATE OF FLORIDA
COUNTY OF _____

Sworn to (or affirmed) and subscribed before me this _____ day of _____ (year) by
_____(name of person making statement).

Personally known _____ OR Produced identification _____
Type of identification produced _____

**YOU MUST MAIL OR DELIVER THIS COMPLETED FORM, WITH ALL ATTACHMENTS, TO THE PLAINTIFF'S JUDGMENT CREDITOR OR THE PLAINTIFF'S JUDGMENT CREDITOR'S ATTORNEY, BUT DO NOT FILE THIS FORM WITH THE CLERK OF THE COURT.**

# EXHIBIT D

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR ST. JOHNS COUNTY, FLORIDA

CASE NO: CA17-1181

LENNAR HOMES, LLC,
a Florida Limited Liability Company,

      Plaintiff,

v.

LITESTREAM HOLDINGS, LLC,
a Florida Limited Liability Company,

      Defendant.
_____/

**ORDER COMPELLING LITESTREAM AND PAUL RHODES**
**TO COMPLETE THE RULE 1.977 FACT INFORMATION SHEET**

This CAUSE came before the Court on July 2, 2019 on Plaintiff, Lennar Homes, LLC's

("Lennar"), Motion to Compel Litestream Holdings ("Litestream") to Complete the Fact

Information Sheet and For the Imposition of Sanctions ("Motion"). The Court reviewed the

Motion and being familiar with the case and Litestream's dilatory actions and contumacious

disregard for multiple Orders, and having the benefit of argument of counsel for Lennar, hereby

ORDERS as follows:

  1.  The Motion is GRANTED.

  2.  Litestream is hereby held in contempt of this Court for failure to complete the Rule

1.977 fact information sheet as required by the Final Judgment in this matter.

  3.  The CEO of Litestream, Paul Rhodes shall complete under oath the Rule 1.977 Fact

Information Sheet for Litestream that was attached to the Final Judgment and produce it to counsel

for Lennar within seven (7) days from the date of this Order.

4.      If Paul Rhodes fails to complete the Fact Information Sheet within the time prescribed herein, and after the Court's judicial assistant receives written certification from counsel for Lennar that no Fact Information Sheet has been received, the Court will hold an additional hearing on July 30, 2019 at 8:45 a.m. for Paul Rhodes to show cause as to whether he should be held in contempt for the failure to complete the Fact Information Sheet.  If hearing time becomes available after the expiration of seven (7) days from this Order and prior to July 30, the show-cause hearing may be rescheduled with proper notice to the parties.

5.      The Court reserves ruling on additional sanctions and attorneys' fees and costs in obtaining this Order and further reserves jurisdiction to enter any such other relief in connection with the Final Judgment and Litestream's repeated failure to comply with this Court's Orders.

DONE AND ORDERED in chambers, in St. Johns County, Florida, on 10 day of July, 2019.

e-Signed 7/10/2019 3:05 PM CA17-1181

CIRCUIT JUDGE

Copies to all counsel of record and to:
Litestream Holdings, LLC (via email and USPS mail)
c/o Paul Rhodes
500 Australian Ave. S., Ste. 648
West Palm Beach, FL 33401
E-Mail: prhodes@litestream.net

# EXHIBIT E

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR ST. JOHNS COUNTY, FLORIDA

CASE NO: CA17-1181

LENNAR HOMES, LLC,
a Florida Limited Liability Company,

Plaintiff,

v.

LITESTREAM HOLDINGS, LLC,
a Florida Limited Liability Company,

Defendant.

_____/

## <u>WRIT OF BODILY ATTACHMENT</u>

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

THIS CAUSE came before this Court on July 2 and July 30, 2019 on hearings to show cause after Defendant, Litestream Holdings, LLC's ("Litestream") and its CEO, Paul Rhodes were both found in contempt of court for failure to comply with this Court's Orders directing Litestream and Paul Rhodes to complete under oath the Rule 1.977 Fact Information Sheet for Litestream that was attached to the Final Judgment. Paul Rhodes also failed to appear at the show cause hearing as required by the Court's July 10, 2019 Order. This Court has reviewed the court file and is otherwise fully advised in the premises. Based on the foregoing, it is Ordered as follows:

1.    This Court finds that Litestream and its CEO, Paul Rhodes, are in willful contempt of court for their failure to complete the Rule 1.977 Fact Information Sheet and for failure to appear at the July 30 show cause hearing.

2.    YOU ARE HEREBY COMMANDED to attach and take into custody PAUL RHODES and confine him in the county jail. **Service of this Writ may be made on any day of the week and any time of the night or day, including Sunday and holidays.**

3.    This Court further ORDERS that the Sheriff hold Paul Rhodes in safe keeping and produce Paul Rhodes before a first appearance judge within 48 hours of Paul Rhodes' detention, so the first appearance judge may order the Sheriff to produce Paul Rhodes to this Court, whereby Paul Rhodes shall be provided an opportunity to comply with this Court's July 10 Order and otherwise purge himself of contempt.

4.     This Court further orders that the Sheriff's office shall notify this Court of Paul Rhodes' detention and the execution of this Writ no later than 4:00 p.m. the first business day after Paul Rhodes is detained.

5.     IT IS FURTHER ORDERED that Paul Rhodes may purge this contempt and be immediately released from custody at any time if and when he completes and executes the Rule 1.977 Fact Information Sheet.

6.     The descriptive information for Paul Rhodes is as follows:

**Name**: Paul Andrew Rhodes
**Home Address**: 1225 N Lake Way, Palm Beach, FL 33480
**Business Address**: 500 S Australian Ave, Suite 648 West Palm Beach, FL 33401
**Race**: Caucasian
**Date of Birth**: February 1960
**SSN**: ███████

**DONE AND ORDERED** in Chambers, St. Johns County, Florida, this _30th_ day of
_July_ 2019.

R Lee Smith

Honorable R. Lee Smith
Circuit Judge

Copies to all counsel of record and to:
Litestream Holdings, LLC (via email and USPS mail)
c/o Paul Rhodes
500 Australian Ave. S., Ste. 648
West Palm Beach, FL 33401
E-Mail: prhodes@litestream.net

# EXHIBIT F

**Fill in this information to identify the case:**

Debtor name    **Litestream Holdings, LLC**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF FLORIDA

Case number (if known)   **19-26043**

☐ Check if this is an amended filing

<u>Official Form 202</u>
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■   *Schedule H: Codebtors* (Official Form 206H)
- ■   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ■   Amended *Schedule*    **E/F**
- ☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐   Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 23, 2019**     X **/s/ Paul Rhodes**
                                             Signature of individual signing on behalf of debtor

                                             **Paul Rhodes**
                                             Printed name

                                             **Managing Member**
                                             Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name     **Litestream Holdings, LLC**

United States Bankruptcy Court for the:     SOUTHERN DISTRICT OF FLORIDA

Case number (if known)    **19-26043**

☐ Check if this is an
amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals
12/15

### Part 1:   Summary of Assets

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*............................................................................... $      0.00

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*............................................................................ $      5,652,024.22

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*.............................................................................. $      5,652,024.22

### Part 2:   Summary of Liabilities

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $      1,096,247.00

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................ $      379,356.51

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.............................. +$      3,141,358.17

4.   Total liabilities ..........................................................................................
    Lines 2 + 3a + 3b      $      4,616,961.68

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name  **Litestream Holdings, LLC**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF FLORIDA

Case number (if known)  **19-26043**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**      **Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Wells Fargo Bank, N.A.** | **Checking** | **9889** | $21,143.33 |
| 3.2. | **PNC Bank** | **Checking** | **8051** | $70,283.30 |
| 3.3. | **PNC Bank** | **Checking** | **8676** | $262.59 |
| 3.4. | **Bank United** | **Checking** | **2550** | $50.00 |
| 3.5. | **Fidelity Investments** | **Brokerage** | **2203** | $10,355.00 |

4. **Other cash equivalents** *(Identify all)*

5. **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $102,094.22 |
|---|

**Part 2:**      **Deposits and Prepayments**

| Debtor | **Litestream Holdings, LLC** | Case number *(If known)* **19-26043** |
|---|---|---|
| | Name | |

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

7. **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1. | **Florida Power and Light** | **$6,064.00** |
|---|---|---|

| 7.2. | **AB Distributors - Security Deposit for Rent** | **$3,128.00** |
|---|---|---|

| 7.3. | **JEA - Security Deposit St. Augustine Power Company** | **$441.00** |
|---|---|---|

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| 8.1. | **Lindell Farson - retainer for legal representation** | **$10,000.00** |
|---|---|---|

9. **Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.

**$19,633.00**

**Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
■ Yes Fill in the information below.

11. **Accounts receivable**

| 11a. 90 days old or less: | **78,563.00** | - | **0.00** | =.... | **$78,563.00** |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | **354,604.00** | - | **0.00** | =.... | **$354,604.00** |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

12. **Total of Part 3.**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.

**$433,167.00**

**Part 4:** **Investments**

13. **Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:** **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor | **Litestream Holdings, LLC** | Case number *(If known)* **19-26043** |
|---|---|---|
| | Name | |

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| | General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|---|
| 47. | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1. | **2015 Diamond Trailer**<br>**VIN No: 53NBE1014F1023328** | **$0.00** | | **Unknown** |
| 47.2. | **2014 Ford F150 (leased vehicle)**<br>**Vin No: 1FTNF1CF1EKD20675**<br>**Mileage: 86,330** | **$0.00** | | **$0.00** |
| 47.3. | **2014 Ford F150 (leased vehicle)**<br>**Vin No:1FTFW1ET0EFB41060**<br>**Mileage: 119,034** | **$0.00** | | **$0.00** |
| 47.4. | **2015 Nissan NV 1500 (leased vehicle)**<br>**Vin No: 1N6BF0KMXFN803172**<br>**Mileage: 47,866** | **$0.00** | | **$0.00** |
| 47.5. | **2018 Nissan NV200 (leased vehicle)**<br>**Vin No: 3N6CM0KN5JK694993**<br>**Mileage: 26,096** | **$0.00** | | **$0.00** |
| 47.6. | **2018 Nissan NV1500 (leased vehicle)**<br>**Vin No: 1N6BF0KM0JN803982**<br>**Mileage: 22,232** | **$0.00** | | **$0.00** |

| 48. | **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, |
|---|---|
| | floating homes, personal watercraft, and fishing vessels |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Debtor   **Litestream Holdings, LLC**                                    Case number *(If known)* **19-26043**
         Name

49.   **Aircraft and accessories**

50.   **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**
      **DVRs, Set Top Boxes, Modems Remotes, Cable Cards, and Installation Supplies.**                Unknown                                              $96,130.00

      **Splicer Machine**                          Unknown      Comparable sale                        $1,000.00

      **See attached list of all properties that have improvements and equipment on premises**         Unknown                                          $5,000,000.00

51.   **Total of Part 8.**                                                                    | $5,097,130.00 |
      Add lines 47 through 50. Copy the total to line 87.

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**
      ■ No
      ☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
      ■ No
      ☐ Yes

| Part 9: | Real property |
|---------|---------------|

54. **Does the debtor own or lease any real property?**

   ■ No.  Go to Part 10.
   ☐ Yes Fill in the information below.

| Part 10: | Intangibles and intellectual property |
|----------|---------------------------------------|

59. **Does the debtor have any interests in intangibles or intellectual property?**

   ☐ No.  Go to Part 11.
   ■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.  **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61.  **Internet domain names and websites** **www.litestream.net and www.mylitestream.com** | $0.00 | | $0.00 |
| 62.  **Licenses, franchises, and royalties** **State of Florida Cable Franchise** | $0.00 | | $0.00 |
| 63.  **Customer lists, mailing lists, or other compilations** | | | |
| 64.  **Other intangibles, or intellectual property** | | | |
| 65.  **Goodwill** | | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor | **Litestream Holdings, LLC** | | Case number *(If known)* **19-26043** |
|---|---|---|---|
| | Name | | |

**66.**   **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

**$0.00**

**67.**   **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107**?**

■ No
☐ Yes

**68.**   **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

■ No
☐ Yes

**69.**   **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

■ No
☐ Yes

---

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

| | | Current value of debtor's interest |
|---|---|---|
| **71.** | **Notes receivable**<br>Description (include name of obligor) | |
| **72.** | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | |
| **73.** | **Interests in insurance policies or annuities** | |
| **74.** | **Causes of action against third parties (whether or not a lawsuit has been filed)** | |

| **Litestream Holdings vs. Level 3** | | **Unknown** |
|---|---|---|
| **Nature of claim** | Billing Dispute | |
| **Amount requested** | $0.00 | |

| **Litestream Holdings, LLC vs. Palencia North POA** | | **Unknown** |
|---|---|---|
| **Nature of claim** | Billing Dispute | |
| **Amount requested** | $0.00 | |

| | | |
|---|---|---|
| **75.** | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| **76.** | **Trusts, equitable or future interests in property** | |
| **77.** | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |

**78.**   **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.

**$0.00**

**79.**   **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

■ No

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor   **Litestream Holdings, LLC**                                    Case number *(If known)*   **19-26043**
         Name

☐ Yes

| Debtor | **Litestream Holdings, LLC** | Case number *(If known)* **19-26043** |
|---|---|---|
| | Name | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $102,094.22 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $19,633.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $433,167.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $5,097,130.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $5,652,024.22 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $5,652,024.22 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com



CONFIDENTIAL

## LITESTREAM ASSETS

All on-premises improvements and equipment within the following properties:

- Palencia Property Owners Association of St. Johns County, Inc.        1,360 passings built
- Palencia North Home Owners Association, Inc.        645 passings built
- Glen St. Johns Homeowners Association, Inc.        200 passings built
- The Crossings at Glen St. Johns Homeowners Association, Inc.        294 passings built
- The St. Johns Golf & Country Club Homeowners Association, Inc.        800 passings built
- St. Johns Forest Master Association, Inc.        540 passings built
- Johns Creek Homeowners Association, Inc.        402 passings built
- Johns Creek Phase II Homeowners Association, Inc.        30 passings built
- Stonehurst Plantation Master Association        500 passings built
- The Oaks at St. Johns        161 passings built
- Wingfield Glen Homeowners Association, Inc.        150 passings built
- Kensington        304 passings built
- Johns Creek Business        65 passings built
- Oaks Business        45 passings built

Fiber depicted and specified on the map attached, including:

- Approximately 20 miles of 144 count fiber emanating from Headend

Headend Equipment including:

- All Channel Receivers
- All Chassis
- All Modulators
- All CMTS equipment
- All Transcoders
- All Satellite dishes and associated improvements

Leased Vehicles:

| Year | Make / Model |
|------|--------------|
| 2014 | Ford F150 |
| 2014 | Ford F150 |
| 2015 | Nissan NV1500 |
| 2018 | Nissan NV200 |
| 2018 | Nissan NV1500 |

*Pat Thompson Co.*

**Fill in this information to identify the case:**

Debtor name __**Litestream Holdings, LLC**__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF FLORIDA__

Case number (if known) __**19-26043**__

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1 BankUnited, N.A.**<br>Creditor's Name<br><br>**7765 NW 148th Street<br>Hialeah, FL 33016**<br>Creditor's mailing address<br><br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien<br>**All assets of the Debtor except those released by the UCC 3 as described on schedule 1 of the UCC 3 filed on October 23, 2018.**<br><br>Describe the lien<br>**UCC-1**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$1,096,247.00** | **Unknown** |

| | | | |
|---|---|---|---|
| 3. | **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** | | **$1,096,247.00** |

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

**Fill in this information to identify the case:**

Debtor name **Litestream Holdings, LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF FLORIDA

Case number (if known) **19-26043**

☐ Check if this is an
amended filing

## Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
|---|---|

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $335.17 | $335.17 |
|  | **Collier County Tax Collector** **3291 Tamiami Trail East** **Naples, FL 34112** | ☐ Contingent ☐ Unliquidated ☐ Disputed |  |  |
|  | Date or dates debt was incurred | Basis for the claim: **Tangible Property Taxes for 2018, 2017, and 2016  tax years for 3971 Gulf Shore Blvd N. Legal description: Telecommunications** |  |  |
|  | Last 4 digits of account number **2552** | Is the claim subject to offset? |  |  |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No ☐ Yes |  |  |
| **2.2** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $23,668.45 | $23,668.45 |
|  | **Collier County Tax Collector** **3291 Tamiami Trail East** **Naples, FL 34112** | ☐ Contingent ☐ Unliquidated ■ Disputed |  |  |
|  | Date or dates debt was incurred | Basis for the claim: **Tangible Property Taxes for 2018, 2017, 2016 for 181 Forest Lakes Blvd, Naples FL. Debt was incurred by Litestream Holdings Turtle Lake, LLC.** |  |  |
|  | Last 4 digits of account number **1851** | Is the claim subject to offset? |  |  |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No ☐ Yes |  |  |

| Debtor | **Litestream Holdings, LLC** | Case number *(if known)* | **19-26043** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $34,512.19 |
| | **Collier County Tax Collector** | *Check all that apply.* | |
| | **3291 Tamiami Trail East** | ☐ Contingent | $34,512.19 |
| | **Naples, FL 34112** | ☐ Unliquidated | |
| | | ■ Disputed | |

Date or dates debt was incurred

Basis for the claim:
**Tangible Property Taxes for 2018, 2017, and 2016 for 1785 Santuary Pointe CT Naples, FL. This debt was inccured by Litestream Sterling Oaks, LLC.**

Last 4 digits of account number **1848**

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

---

| | | | |
|---|---|---|---|
| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,392.37 |
| | **Collier County Tax Collector** | *Check all that apply.* | |
| | **3291 Tamiami Trail East** | ☐ Contingent | $6,392.37 |
| | **Naples, FL 34112** | ☐ Unliquidated | |
| | | ■ Disputed | |

Date or dates debt was incurred

Basis for the claim:
**Tangible Property Taxes owed for 2018, 2017, and 2016. Property address 6204 Janes LN Naples, FL 2687. Legal description: F&F, Equipment, Supllies.**

Last 4 digits of account number **7901**

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

---

| | | | |
|---|---|---|---|
| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $136,752.64 |
| | **Collier County Tax Collector** | *Check all that apply.* | |
| | **3291 Tamiami Trail East** | ☐ Contingent | $136,752.64 |
| | **Naples, FL 34112** | ☐ Unliquidated | |
| | | ■ Disputed | |

Date or dates debt was incurred

Basis for the claim:
**Tangible Property Taxes owed for 2018, 2017, 2016, 2015, and 2014.**

Last 4 digits of account number **7891**

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

| Debtor | Litestream Holdings, LLC | Case number (if known) | 19-26043 |
|---|---|---|---|
| | Name | | |

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $674.22 | $674.22 |
|---|---|---|---|---|
| | **Collier County Tax Collector**<br>**3291 Tamiami Trail East**<br>**Naples, FL 34112** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Tangible Property Taxes owed for 2018 and 2017 tax year for property 3000 Sandpiper Bay Circle Naples FL. Legal Description: Telecommunications** | | |
| | Last 4 digits of account number **7055** | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $911.99 | $911.99 |
|---|---|---|---|---|
| | **Collier County Tax Collector**<br>**3291 Tamiami Trail East**<br>**Naples, FL 34112** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Tangible Property Taxes for 2018 and 2017 tax year for property located at 3443 Gulf Shore Blvd N. Legal description: Telecommunications.** | | |
| | Last 4 digits of account number **7042** | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,570.79 | $7,570.79 |
|---|---|---|---|---|
| | **Florida Department of Revenue**<br>**5050 W Tennessee St**<br>**Bldg L**<br>**Tallahassee, FL 32399-0112** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**11/20/2019** | Basis for the claim:<br>**October Sales / Communications Tax** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $101,291.04 | $101,291.04 |
|---|---|---|---|---|
| | **Internal Revenue Service**<br>**Centralized Insolvency Operations**<br>**PO Box 7346**<br>**Philadelphia, PA 19101-7346** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Payroll taxes** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

| Debtor | **Litestream Holdings, LLC** | Case number (if known) | **19-26043** |
|---|---|---|---|
| | Name | | |

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,366.47** | **$2,366.47** |
|---|---|---|---|---|

**Priority creditor's name and mailing address**
**Internal Revenue Service**
**POB 7346**
**Philadelphia, PA 19101-7346**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,366.47**   **$2,366.47**

Date or dates debt was incurred
**12/31/2017**

Basis for the claim:
**Excise Tax**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

---

**2.11** Priority creditor's name and mailing address
**Palm Beach County Tax Collector**
**P.O. Box 3715**
**West Palm Beach, FL 33402-3715**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$0.00**   **$0.00**

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number **Notice Only**

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

---

**2.12** Priority creditor's name and mailing address
**St. Johns County Tax Collector**
**4030 Lewis Speedway**
**Saint Augustine, FL 32084**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$57,177.86**   **$57,177.86**

Date or dates debt was incurred

Basis for the claim:
**2018 and 2019 Tangible Taxes**

Last 4 digits of account number **0000**

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

---

**2.13** Priority creditor's name and mailing address
**St. Lucie County Tax Collector**
**P.O. Box 308**
**Ft. Pierce, FL 34954-0308**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**$7,703.32**   **$7,703.32**

Date or dates debt was incurred
**11/2/2018**

Basis for the claim:
**Tangible taxes**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

**Amount of claim**

Debtor **Litestream Holdings, LLC**
_____
Name

Case number (if known) **19-26043**

| | |
|---|---|
| **3.1** | |

**Nonpriority creditor's name and mailing address**
**AB Distributors, Inc.**
**1116 North Edgewood Ave.**
**Jacksonville, FL 32254**

**Date(s) debt was incurred  9/1/19 - 11/1/19**

**Last 4 digits of account number _**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:  Office rent**

Is the claim subject to offset? ■ No ☐ Yes

**$8,192.25**

---

**3.2**

**Nonpriority creditor's name and mailing address**
**All American Air Conditioning**
**1010 State Road 312**
**St. Augustine, FL 32080**

**Date(s) debt was incurred  10/3/17i - 10/8/18**

**Last 4 digits of account number _**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:  Service**

Is the claim subject to offset? ■ No ☐ Yes

**$747.50**

---

**3.3**

**Nonpriority creditor's name and mailing address**
**American Builders Insurance Company**
**P.O. Box 723099**
**Atlanta, GA 31139-0099**

**Date(s) debt was incurred  9/10/19 - 10/10/19**

**Last 4 digits of account number  2328**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:  Workman's comp insurance**

Is the claim subject to offset? ■ No ☐ Yes

**$1,919.00**

---

**3.4**

**Nonpriority creditor's name and mailing address**
**Ansbacher Law**
**8818 Goodbys Executive Dr. Ste. 100**
**Jacksonville, FL 32217**

**Date(s) debt was incurred  2/19/2019**

**Last 4 digits of account number  471**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:  Legal services**

Is the claim subject to offset? ■ No ☐ Yes

**$6,444.63**

---

**3.5**

**Nonpriority creditor's name and mailing address**
**Arin**
**P.O. Box 759477**
**Baltimore, MD 21275-9477**

**Date(s) debt was incurred  6/28/2019**

**Last 4 digits of account number  HL13**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:  Annual fee**

Is the claim subject to offset? ■ No ☐ Yes

**$1,000.00**

---

**3.6**

**Nonpriority creditor's name and mailing address**
**AT&T**
**Attn:  Risk Mgmt**
**1010 Pine, 06-NW**
**St. Louis, MO 63101**

**Date(s) debt was incurred  3/6/2017**

**Last 4 digits of account number _**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:  Damage of cable**

Is the claim subject to offset? ■ No ☐ Yes

**$200.35**

---

**3.7**

**Nonpriority creditor's name and mailing address**
**Brinks Home Security**
**P.O. Box 814530**
**Dallas, TX 75381-4530**

**Date(s) debt was incurred  5/14/18 - 12/14/18**

**Last 4 digits of account number  6101**

**As of the petition filing date, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:  Security service**

Is the claim subject to offset? ■ No ☐ Yes

**$1,436.08**

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Litestream Holdings, LLC** | Case number (if known) | **19-26043** |
|---|---|---|---|
| | Name | | |

| 3.8 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,450.00** |
|---|---|---|---|
| | **Castillo Lawn Service, Inc.**<br>**621 20th St. NE**<br>**Naples, FL 34120-3661** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **4/9/18 - 11/22/18** | **Basis for the claim:**  **Lawn service** | |
| | Last 4 digits of account number  **6101** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$597.00** |
|---|---|---|---|
| | **Cerida Investment Corp.**<br>**1000 North Washington Blvd.**<br>**Sarasota, FL 34236** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **10/1/19 - 10/31/19** | **Basis for the claim:**  **Answering service** | |
| | Last 4 digits of account number  **2764** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.10 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$218.55** |
|---|---|---|---|
| | **Comcast**<br>**141 NW 16th St**<br>**Pompano Beach, FL 33060-5250** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **1/11/2019** | **Basis for the claim:**  **Internet services** | |
| | Last 4 digits of account number  **8** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.11 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$839.19** |
|---|---|---|---|
| | **Confluent Technology Group**<br>**85 Confluent Dr**<br>**Sikeston, MO 63801** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **6/6/2018** | **Basis for the claim:**  **Repairs** | |
| | Last 4 digits of account number  **_** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.12 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$3,475.69** |
|---|---|---|---|
| | **Conserv**<br>**200 CrossKeys Office Park**<br>**Fairport, NY 14450** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **_** | **Basis for the claim:**  **Miscellaneous services** | |
| | Last 4 digits of account number  **3301** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.13 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$12,204.40** |
|---|---|---|---|
| | **Cox Media Group**<br>**P.O. Box 809619**<br>**Chicago, IL 60680-9619** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred  **10/15/14 - 12/30/14** | **Basis for the claim:**  **Retransmission fees** | |
| | Last 4 digits of account number  **_** | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.14 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$290.26** |
|---|---|---|---|
| | **De Lage Landen Financial Services, Inc.**<br>**P.O. Box 41602**<br>**Philadelphia, PA 19101-1602** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **9/7/2019** | **Basis for the claim:**  **Copier lease** | |
| | Last 4 digits of account number  **1540** | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Litestream Holdings, LLC** | Case number (if known) | **19-26043** |
|---|---|---|---|
| | Name | | |

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,540.89 |
|---|---|---|---|

**Directworx**
**590 South Service Rd.**
**Stoney Creek, ON L8E 2W1**

Date(s) debt was incurred  **8/30/19 - 10/31/19**

Last 4 digits of account number  **TH01**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Digital services**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $633.96 |
|---|---|---|---|

**Esquire**
**2700 Centennial Tower**
**101 Marietta St.**
**Atlanta, GA 30303**

Date(s) debt was incurred  **2/20/2019**

Last 4 digits of account number  _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Legal services**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $399.00 |
|---|---|---|---|

**Evolution Digital, LLC**
**Attn:  Accounts Receivable**
**7347 S. Revere Parkway**
**Building A**
**Centannial, CO 80112**

Date(s) debt was incurred  **9/30/18 - 12/31/18**

Last 4 digits of account number  _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **TIVO fees**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $56.82 |
|---|---|---|---|

**Express Messenger Service LLC**
**123 NW 13th St. Ste. 312**
**Boca Raton, FL 33432**

Date(s) debt was incurred  **8/20/2019**

Last 4 digits of account number  **RHO**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Delivery services**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,181.66 |
|---|---|---|---|

**Exxon Mobil Fleet National**
**Wex Bank**
**P.O. Box 6293**
**Carol Stream, IL 60197**

Date(s) debt was incurred  **11/25/19**

Last 4 digits of account number  **9128**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Gas Credit Card**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $29.48 |
|---|---|---|---|

**FDOT**
**P.O. Box 71237**
**Charlotte, NC 28272-1237**

Date(s) debt was incurred  **1/19/2019**

Last 4 digits of account number  **6950**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Tolls**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,713.06 |
|---|---|---|---|

**FEC Row LLC**
**7150 Philips Highway**
**Jacksonville, FL 32256**

Date(s) debt was incurred  **7/1/2019**

Last 4 digits of account number  **688**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **License fee**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Litestream Holdings, LLC** | Case number (if known) | **19-26043** |
|---|---|---|---|
| | Name | | |

| 3.22 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,350.00** |
|---|---|---|---|

**First Limerick, Inc.**
P.O. Box 150336
Altamonte Springs, FL 32715-0336

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __4/8/2019__

**Basis for the claim:**  __Consulting__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.23 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$9,889.02** |
|---|---|---|---|

**Florida Blue**
PO Box 660299
Dallas, TX 75266

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __10/18/2019__

**Basis for the claim:**  __Health insurance__

Last 4 digits of account number  __6791__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.24 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$90.10** |
|---|---|---|---|

**Florida Court Reporting**
2161 Palm Beach Lakes Blvd. Ste. 302
West Palm Beach, FL 33409

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __3/8/2019__

**Basis for the claim:**  __Legal service__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.25 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,788.22** |
|---|---|---|---|

**Florida Power & Light Co**
General Mail Facililty
Miami, FL 33188-0001

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __11/5/2019__

**Basis for the claim:**  __Power services__

Last 4 digits of account number  __8593__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.26 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$86.60** |
|---|---|---|---|

**Florida Telecommunications Relay, Inc.**
Accounts Receivable Dept.
1820 E. Park Avenue Ste. 101
Tallahassee, FL 32301

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __6/30/2018__

**Basis for the claim:**  __FL relay fee__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.27 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$156,442.79** |
|---|---|---|---|

**Frank Mambuca**
478 Terra Vista Court
Naples, FL 34119

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred  __9/13/2019__

**Basis for the claim:**  __Final Judgment__

Last 4 digits of account number  __8604__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.28 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$22,921.98** |
|---|---|---|---|

**GLDS**
306 Seippel Blvd.
Beaver Dam, WI 53916

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  __9/1/19 - 11/1/19__

**Basis for the claim:**  __Hosting service__

Last 4 digits of account number  __S730__

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Litestream Holdings, LLC | | Case number (if known) | 19-26043 |
|---|---|---|---|---|
| | Name | | | |

| 3.29 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $15,000.00 |
|---|---|---|---|

**3.29** Nonpriority creditor's name and mailing address
Glenn St. Johns Homeowners
Association, Inc.
c/o  Rizetta & Company
2806 N Fifth St Unit 403
Saint Augustine, FL 32084

Date(s) debt was incurred ___
Last 4 digits of account number  1276

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Potential Liability from Lawsuit

Is the claim subject to offset? ■ No ☐ Yes

$15,000.00

---

**3.30** Nonpriority creditor's name and mailing address
GT Leasing
2810 St. Augustine Rd.
Jacksonville, FL 32207

Date(s) debt was incurred  9/26/19 - 11/20/19
Last 4 digits of account number ___

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Vehicle lease payment

Is the claim subject to offset? ■ No ☐ Yes

$6,792.69

---

**3.31** Nonpriority creditor's name and mailing address
Gunster
777 South Flagler Dr. Ste. 500
East Tower
West Palm Beach, FL 33401

Date(s) debt was incurred  4/23/17 - 6/23/17
Last 4 digits of account number ___

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Legal services

Is the claim subject to offset? ■ No ☐ Yes

$11,588.80

---

**3.32** Nonpriority creditor's name and mailing address
Hahn Loeser
5811 Pelican Bay Blvd. Ste. 650
Naples, FL 34108

Date(s) debt was incurred  5/31/18 - 12/19/18
Last 4 digits of account number ___

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Legal services

Is the claim subject to offset? ■ No ☐ Yes

$71,265.82

---

**3.33** Nonpriority creditor's name and mailing address
Havoline Express Lube
3451 N. Ponce De Leon Blvd.
St. Augustine, FL 32084

Date(s) debt was incurred  3/12/2019
Last 4 digits of account number  00LS

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Auto services

Is the claim subject to offset? ■ No ☐ Yes

$418.03

---

**3.34** Nonpriority creditor's name and mailing address
i2 Solutions
2847 43rd Ave NE
Naples, FL 34120

Date(s) debt was incurred ___
Last 4 digits of account number ___

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Final judgment

Is the claim subject to offset? ■ No ☐ Yes

$28,901.22

---

**3.35** Nonpriority creditor's name and mailing address
In Demand Networks LLC
345 Hudson St. 17th Floor
New York, NY 10014

Date(s) debt was incurred  Nov 17 - Dec 18
Last 4 digits of account number ___

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Sports carriage fees

Is the claim subject to offset? ■ No ☐ Yes

$2,784.58

---

| Debtor | **Litestream Holdings, LLC** | Case number (if known) | **19-26043** |
|---|---|---|---|
| | Name | | |

---

**3.36** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$13,592.80**

**Interstate TRS Fund**
**P.O. Box 62634**
**Baltimore, MD 21264-2634**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2017- 2018**

Basis for the claim:  **FCC fees**

Last 4 digits of account number  **4822**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.37** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,994.33**

**IPFS Corporation**
**P.O. Box 412086**
**Kansas City, MO 64141-2086**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **10/21/2019**

Basis for the claim:  **Liability insurance**

Last 4 digits of account number  **8259**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.38** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,991.80**

**J & D Heating & Air Conditioning, Inc.**
**5631 Halifax Ave.**
**Fort Myers, FL 33912**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **8/28/2018**

Basis for the claim:  **Miscellaneous services**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.39** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$163.12**

**JEA**
**PO Box 45047**
**Jacksonville, 32232-5047 32232-5047**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **11/12/2019**

Basis for the claim:  **Miscellaneous  services**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.40** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$10.00**

**LeeWay Service Center**
**1366 Colonial Blvd.**
**Ft. Myers, FL 33907**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **6/4/2018**

Basis for the claim:  **Tolls**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.41** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$188,966.08**

**Lennar Homes, LLC**
**700 N.W. 107th Ave**
**400**
**Miami, FL 33172**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Final Judgment**

Last 4 digits of account number  **1181**

Is the claim subject to offset? ☐ No ☐ Yes

---

**3.42** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$208,594.86**

**Level 3 Communications LLC**
**P.O. Box 910182**
**Denver, CO 80291-0182**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred  **3/1/2017**

Basis for the claim:  **Miscellaneous services**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Litestream Holdings, LLC** | | Case number (if known) | **19-26043** |
|---|---|---|---|---|
| | Name | | | |

| 3.43 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$6,142.44** |
|---|---|---|---|
| | **Lindell & Farson PA**<br>**12276 San Jose Blvd**<br>**Ste 126**<br>**Jacksonville, FL 32223** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **11/5/2019** | **Basis for the claim:**  **Legal services** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.44 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$5,567.04** |
|---|---|---|---|
| | **MLB Network, LLC**<br>**Bank of America**<br>**16425 Collections Center Dr.**<br>**Chicago, IL 60693-0164** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred  **1/31/2019** | **Basis for the claim:**  **Programming** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.45 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$4,251.24** |
|---|---|---|---|
| | **Momentum Telecom**<br>**222 Chastain Meadows Ct. Ste. 100**<br>**Kennesaw, GA 30144** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **5/1/19 - 10/1/19** | **Basis for the claim:**  **Internet/phone service** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.46 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$8,238.27** |
|---|---|---|---|
| | **NBA TV, LLC**<br>**Olympic Tower**<br>**645 Fifth Ave.**<br>**New York, NY 10022** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **5/1/16 - 10/1/19** | **Basis for the claim:**  **Retransmission fees** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.47 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$51,037.30** |
|---|---|---|---|
| | **NCTC**<br>**11200 Corporate Ave**<br>**Lenexa, KS 66219** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **10/30/2019** | **Basis for the claim:**  **Programming** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.48 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$17.05** |
|---|---|---|---|
| | **Neustar, inc.**<br>**P.O. Box 403034**<br>**Atlanta, GA 30384-3031** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **5/31/2018** | **Basis for the claim:**  **Miscellaneous  services** | |
| | Last 4 digits of account number  **6100** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.49 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$7,801.22** |
|---|---|---|---|
| | **Nexstar Broadcasting, Inc.**<br>**P.O. Box 841815**<br>**Dallas, TX 75284** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred  **4/30/16 - 1/31/17** | **Basis for the claim:**  **Retransmission fees** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | Litestream Holdings, LLC | Case number (if known) | 19-26043 |
|---|---|---|---|
| | Name | | |

| 3.50 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,417.99** |
|---|---|---|---|

**NHLN Affiliate Sales**
**Mail Code 11115**
**P.O. Box 70280**
**Philadelphia, PA 19176-0280**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **11/30/18 - 1/16/19**

Basis for the claim:  **Programming**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.51 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$135.70** |
|---|---|---|---|

**NPAC Billing Operations**
**c/o iconnectiv**
**100 Somersat Corporate Blvd Center**
**Bridgewater, NJ 08807**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Phone Service Provider Charges**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.52 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,515.13** |
|---|---|---|---|

**Old City Tire Outlet**
**250 San Marco Ave.**
**St. Augustine, FL 32085**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **10/10/2018**

Basis for the claim:  **Vehicle repair**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.53 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$31,034.84** |
|---|---|---|---|

**Pioneer Credit Recovery**
**USB Bank - DMS PNR**
**POB 97913**
**St Louis, MO 63197-9000**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **USAC collections agent**

Last 4 digits of account number  **0132**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.54 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,269.00** |
|---|---|---|---|

**Pop Media Networks, LLC**
**Lock Box #9026**
**P.O. Box 8500**
**Philadelphia, PA 19178-9026**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **7/31/19 - 9/30/19**

Basis for the claim:  **Programming fees**

Last 4 digits of account number  **300**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.55 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,863.52** |
|---|---|---|---|

**Prestige Land & Law, PLLC**
**120 Butler St. Ste. B**
**West Palm Beach, FL 33407**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **3/22/19 - 7/3/19**

Basis for the claim:  **Legal fees**

Last 4 digits of account number  **1166**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.56 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$455.73** |
|---|---|---|---|

**Principal Life Group**
**P.O. Box 14513**
**Des Moines, IA 50306-3513**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **10/16/2019**

Basis for the claim:  **Dental insurance**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

Debtor   **Litestream Holdings, LLC**
Name                                                           Case number (if known)   **19-26043**

---

| 3.57 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,809,092.48** |
|---|---|---|---|

**Rhodes, Paul**
**500 Australian Ave So**
**Ste 648**
**West Palm Beach, FL 33401**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Loans to company__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.58 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$390.00** |
|---|---|---|---|

**Rock Legal Services**
**2048 Ponce De Leon Ave.**
**West Palm Beach, FL 33407**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  2/6/2019

**Basis for the claim:** __Legal services__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.59 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,279.37** |
|---|---|---|---|

**Rovi Guides, Inc.**
**7140 South Lewis Ave.**
**Tulsa, OK 74136**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  9/1/19 - 10/1/19

**Basis for the claim:** __Channel guide__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.60 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,399.95** |
|---|---|---|---|

**Sage**
**1715 N Brown Road**
**Lawrenceville, GA 30043**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  8/28/2019

**Basis for the claim:** __Dues & subscriptions__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.61 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$27,373.97** |
|---|---|---|---|

**Seidensticker & San Filippo LLC**
**909 6th Ave N**
**Ste 100**
**Naples, FL 34102**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

**Basis for the claim:** __Potential Liability from Lawsuit__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.62 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,938.33** |
|---|---|---|---|

**Showtime Networks, Inc.**
**P.O. Box 13495**
**Newark, NJ 07188-0495**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  8/31/19 - 10/31/19

**Basis for the claim:** __Programming fees__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.63 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$229.68** |
|---|---|---|---|

**SNI/SI Networks, LLC**
**23398 Network Place**
**Chicago, IL 60673-3398**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  7/1/18 - 9/1/18

**Basis for the claim:** __Programming fees__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Litestream Holdings, LLC | | Case number (if known) | 19-26043 |
|---|---|---|---|---|
| | Name | | | |

| 3.64 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $19,500.00 |
|---|---|---|---|
| | **Sommers, Everhart & Kohler, P.A.**<br>**380 Columbia Dr. Ste. 111**<br>**West Palm Beach, FL 33409** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __10/20/2014__ | Basis for the claim: __Accounting fees__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.65 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $135,000.00 |
|---|---|---|---|
| | **Steven Kovacheff**<br>**Cathy Ann Scott Esq.**<br>**250 S Central Blvd Ste A**<br>**Jupiter, FL 33458** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __Final Judgment__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.66 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $48,153.95 |
|---|---|---|---|
| | **Sun Sports**<br>**File #55652**<br>**Los Angeles, CA 90074-5652** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred __9/7/2017__ | Basis for the claim: __Programming services__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $13,155.51 |
|---|---|---|---|
| | **Sunshine State One Call of Florida, Inc.**<br>**11 Plantation Rd.**<br>**Debary, FL 32713** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __10/31/2016 - 10/31/19__ | Basis for the claim: __Locating expense__ | |
| | Last 4 digits of account number __1108__ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $35.43 |
|---|---|---|---|
| | **TECO**<br>**PO Box 31017**<br>**Tampa, FL 33631-3017** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __11/6/2019__ | Basis for the claim: __Miscellaneous services__ | |
| | Last 4 digits of account number __2__ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.69 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,150.00 |
|---|---|---|---|
| | **Templeton**<br>**222 Lakeview Ave. Ste. 1200**<br>**West Palm Beach, FL 33401** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __1/1/2018__ | Basis for the claim: __Accounting fees__ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.70 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $115.03 |
|---|---|---|---|
| | **Terminix**<br>**P.O. Box 742592**<br>**Cincinnati, OH 45274-2592** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __9/23/2019__ | Basis for the claim: __Pest control__ | |
| | Last 4 digits of account number __2809__ | Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | Litestream Holdings, LLC | Case number (if known) | 19-26043 |
|---|---|---|---|
| | Name | | |

| 3.71 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,367.26 |
|---|---|---|---|

**Tower Distribution Company**
Attn: Accounts Receivable
5980 Collection Center Dr.
Chicago, IL 60693

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __3/1/2019 - 10/1/19__

Basis for the claim: __Retransmission fees__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.72 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $644.00 |
|---|---|---|---|

**TSQ Solutions, Inc.**
P.O. Box 826
Wilton, CA 95693-0826

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __9/23/19 - 10/22/19__

Basis for the claim: __PPV__

Last 4 digits of account number __9657__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.73 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,750.00 |
|---|---|---|---|

**Uniti Fiber**
P.O. Box 841153
Dallas, TX 75284-1153

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __10/1/2019__

Basis for the claim: __Internet service__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.74 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,020.87 |
|---|---|---|---|

**Universal Service Administrative Co.**
P.O. Box 105056
Atlanta, GA 30348-5056

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __USAC phone fees__

Last 4 digits of account number __4822__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.75 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,158.55 |
|---|---|---|---|

**Veritext LLC**
2 S. Biscayne Blvd. Ste. 2250
Miami, FL 33131

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2/12/2019__

Basis for the claim: __Legal services__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.76 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $31,600.30 |
|---|---|---|---|

**Vubiquity**
3900 W. Alameda Ave. Ste. 1700
Burbank, CA 91505

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred __3/31/2018 - 2/28/19__

Basis for the claim: __On Demand__

Last 4 digits of account number __476__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.77 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $90.75 |
|---|---|---|---|

**W.B. Underground Cable, Inc.**
319 Summer Springs Ct.
Jacksonville, FL 32225

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __8/18/2017__

Basis for the claim: __Construction__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Litestream Holdings, LLC | Case number (if known) | 19-26043 |
|---|---|---|---|
| | Name | | |

**3.78** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$8,084.89**

WCWJ - TV
P.O. Box 936261
Atlanta, GA 31193-6261

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  2/28/2017 - 12/31/18

Basis for the claim:  Retransmission fees WB

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.79** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$26,596.86**

William Haggarty
Daren Phillips Esq
350 5th Ave S
Ste 200
Naples, FL 34102

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred __

Basis for the claim:  Judgment - settlement balance

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.80** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$16,969.50**

William McKinley Law PA
PO Box 2226
Bartow, FL 33831

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  11/1/2019

Basis for the claim:  Legal services

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.81** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,364.99**

Windstream
Attn:  Customer Care
P.O. Box 3177
Cedar Rapids, IA 52406-3177

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  10/22/2017

Basis for the claim:  Internet / phone

Last 4 digits of account number  6069

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.82** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$10,318.35**

Windstream
Attn:  Customer Care
P.O. Box 3177
Cedar Rapids, IA 52406-3177

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  3/29/2019

Basis for the claim:  Internet / phone

Last 4 digits of account number  7182

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.83** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$26,328.10**

WJXX/Tenga
P.O. Box 637641
Cincinnati, OH 45263-7641

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  3/1/2016

Basis for the claim:  Retransmission fees ABC

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.84** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,300.97**

Yes Network
32896 Collection Dr.
Chicago, IL 60693-0328

☐ Contingent
☐ Unliquidated
☑ Disputed

Date(s) debt was incurred  10/11/2017

Basis for the claim:  Retransmission fees

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

**Part 3:** List Others to Be Notified About Unsecured Claims

| Debtor | **Litestream Holdings, LLC** | | Case number (*if known*) | **19-26043** |
|---|---|---|---|---|
| | Name | | | |

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Anthony Lawhon, P.A.**<br>**3003 Tamiami Trail N., Suite 200**<br>**Naples, FL 34103** | Line **3.27**<br><br>☐ Not listed. Explain ____ | _ |
| 4.2 | **Dennis Hollingsworth, Tax Collector**<br>**P.O. Box 9001**<br>**St. Augustine, FL 32085-9001** | Line **2.12**<br><br>☐ Not listed. Explain ____ | _ |
| 4.3 | **Intelligent Infrastructure Solutions**<br>**, LLC**<br>**7676 Jean Blvd**<br>**Fort Myers, FL 33967** | Line **3.34**<br><br>☐ Not listed. Explain ____ | _ |
| 4.4 | **Jimerson & Cobb, P.A.**<br>**One Independant Drive**<br>**Suite 1400**<br>**Jacksonville, FL 32202** | Line **3.29**<br><br>☐ Not listed. Explain ____ | _ |
| 4.5 | **Lennar Homes LLC**<br>**Michael Orr Esq.**<br>**50 N Laura St**<br>**Ste 1675**<br>**Jacksonville, FL 32202** | Line **3.41**<br><br>☐ Not listed. Explain ____ | _ |

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

**5.  Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | 379,356.51 |
| **5b. Total claims from Part 2** | 5b. + | $ | 3,141,358.17 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | 3,520,714.68 |

**Fill in this information to identify the case:**

Debtor name    **Litestream Holdings, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number (if known)    **19-26043**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
     ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
     ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*      *Property*
(Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **commercial office and warehouse lease located at 280 Business Park Circle Suite 412 & 413, St. Augustine Florida 32095. Lease expires on January 31, 2020** |
| | **A-B Distibutors, Inc.**<br>**1116 N. Edgewood Ave.**<br>**Jacksonville, FL 32254** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Contract between Debtor and D.R. Horton, Inc. - Jacksonville to provide broadband cable television services and internet to the community.**<br>**February 7, 2022** |
| | **D.R. Horton, Inc. - Jacksonville**<br>**9456 Philips Highway, Suite 1**<br>**Jacksonville, FL 32256** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | **Copier Lease**<br><br>**October 2020** |
| | **DeLage Landen**<br>**POB 41602**<br>**Mc Bee, SC 29101** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining | **Vehicle Leases**<br><br>**June 1, 2020** |
| | **GT Leasing**<br>**2810 St. Augustine Rd**<br>**Jacksonville, FL 32207** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor 1 | **Litestream Holdings, LLC** | | | Case number *(if known)* | **19-26043** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

List the contract number of any government contract _____

| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Contract between Debtor and Johns Creek, LLC to provide broadband cable television services and internet to the community.** | |
|---|---|---|---|
| | State the term remaining | | **Johns Creek, LLC
3020 Hartley Road, Suite 100
Jacksonville, FL 32257** |
| | List the contract number of any government contract | | |

| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Contract between Debtor and KB Home Jacksonville, LLC to provide broadband cable television services and internet to the community.** | |
|---|---|---|---|
| | State the term remaining | **June 1, 2027** | **KB Home Jacksonville, LLC
10475 Fortune Parkway, Suite 100
Jacksonville, FL 32256** |
| | List the contract number of any government contract | | |

| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Contract between Debtor and Palencia North Homeowners Association to provide broadband cable television services and internet to the community.** | |
|---|---|---|---|
| | State the term remaining | **September 27, 2022** | **Palencia North Homeowners Association
14785 St. Augustine Road
Jacksonville, FL 32256** |
| | List the contract number of any government contract | | |

| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Contract between Debtor and Palencia Property Owners Association of St. Johns County, Inc. to provide broadband cable television services and internet to the community.** | |
|---|---|---|---|
| | State the term remaining | | **Palencia Property Owners Association of St Johns County, Inc
605 Palencia Club
Saint Augustine, FL 32095** |
| | List the contract number of any government contract | | |

Debtor 1  **Litestream Holdings, LLC**                                    Case number *(if known)*  **19-26043**
First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Marketing Contract** | |
|---|---|---|---|
| | State the term remaining | **January 11, 2020** | **Pat Thompson, Co** |
| | List the contract number of any government contract | | **3 Gallatin Drive, Apt A** **Bozeman, MT 59718** |

**Fill in this information to identify the case:**

Debtor name __Litestream Holdings, LLC__

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF FLORIDA__

Case number (if known) __19-26043__

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **Cable Bahamas LTD** | **Robinson & Old Trail Road New Providence Bahamas BS** | **BankUnited, N.A.** | ■ D __2.1__ ☐ E/F _____ ☐ G _____ |
| 2.2 **Summit Broadband, Inc** | **4558 35th Street Orlando, FL 32811** | **BankUnited, N.A.** | ■ D __2.1__ ☐ E/F _____ ☐ G _____ |

**Fill in this information to identify the case:**

Debtor name    **Litestream Holdings, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number (if known)    **19-26043**

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:    Income**

1. **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From  **1/01/2019** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | **$1,780,202.00** |
| **For prior year:**<br>From  **1/01/2018** to **12/31/2018** | ■ Operating a business<br>☐ Other  **Partial Sale of Assets** | **$10,809,506.00** |
| **For year before that:**<br>From  **1/01/2017** to **12/31/2017** | ■ Operating a business<br>☐ Other _____ | **$6,012,108.00** |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| **For prior year:**<br>From  **1/01/2018** to **12/31/2018** | **Interest from Fidelity Investment account** | **$16.52** |
| **For year before that:**<br>From  **1/01/2017** to **12/31/2017** | **Interest/Dividend** | **$83.93** |

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

| Debtor | Litestream Holdings, LLC | | Case number *(if known)* | 19-26043 |

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.1. **See Attached List** | | **$313,885.90** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>■ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

■ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None.

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

| Part 3: | Legal Actions or Assignments |

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

☐ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1. **Seinsticker & San Filippo, LLC vs. Litestream Holdings, LLC**<br>**2019-CA-1770** | **Civil** | **Twentieth Judicial Court Collier County 33515 Tamiami Trail East Suite 501 Naples, FL 34112** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. **Intelligent Infrastructure Solutions LLC vs. Litestream Holdings, LLC**<br>**2019-CA-376** | **Civil** | **Twentieth Judicial Court Collier County 33515 Tamiami Trail East Suite 501 Naples, FL 34112** | ☐ Pending<br>☐ On appeal<br>■ Concluded |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor  **Litestream Holdings, LLC**                                      Case number *(if known)*  **19-26043**

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.3. | **Larry H Ray, as Collier County Tax Collector**<br>**11-2019-CA-002339-0001-XX** | **Civil** | **Twentieth Judicial Court**<br>**Collier County**<br>**33515 Tamiami Trail East**<br>**Suite 501**<br>**Naples, FL 34112** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.4. | **Dennis W. Hollingsworth as Tax Collector  vs. 2 Brothers Food Mart LLC et al**<br>**552019CA001433A000XX** | **Civil** | **Seventh Judicial Court St. Johns County**<br>**4010 Lewis Speedway #365**<br>**Saint Augustine, FL 32084** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.5. | **Glen St. Johns HOA, Inc. vs. Litestream Holdings, LLC**<br>**552018CA0001276A** | **Civil** | **Seventh Judicial Court St. Johns County**<br>**4010 Lewis Speedway #365**<br>**Saint Augustine, FL 32084** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.6. | **Lennar Homes, LLC vs. Litestream Holdings, LLC**<br>**552017CA001181A000XX** | **Civil** | **Seventh Judicial Court St. Johns County**<br>**4010 Lewis Speedway #365**<br>**Saint Augustine, FL 32084** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.7. | **Frank Mambuca vs. Litestream Holdings, LLC**<br>**19-CA-8604** | **Civil** | **Fifteenth Judicial Court**<br>**Palm Beach**<br>**205 N Dixie Hwy**<br>**West Palm Beach, FL 33401** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.8. | **Steven Kovacheff vs. Litestream Holdings, LLC**<br>**11-2015-CA-000376-001** | **Breach** | **Twentieth Judicial Court**<br>**Collier County**<br>**33515 Tamiami Trail East**<br>**Suite 501**<br>**Naples, FL 34112** | ☐ Pending<br>■ On appeal<br>☐ Concluded |

**8.  Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
|---|---|

**9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | **Florida Gulf Coast University Scholarship Fund**<br>**10501 FGCU Blvd So**<br>**Fort Myers, FL 33965** | **cash donation** | **March 18, 2018** | **$1,000.00** |
| | Recipients relationship to debtor | | | |

| **Part 5:** | **Certain Losses** |
|---|---|

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor | Litestream Holdings, LLC | Case number *(if known)* | 19-26043 |

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

### Part 6:   Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | Furr and Cohen, P.A.<br>2255 Glades Road<br>Suite 301E<br>Boca Raton, FL 33431 | Attorney's Fees and Costs | 11/27/19 | $27,000.00 |
| | Email or website address | | | |
| | Who made the payment, if not debtor?<br>Debtor, funded by BankUnited | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any payments of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

### Part 7:   Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | | Dates of occupancy<br>From-To |
|---|---|---|

### Part 8:   Health Care Bankruptcies

| Debtor | Litestream Holdings, LLC | Case number *(if known)* | 19-26043 |
|---|---|---|---|

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

## Part 9:   Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
■ Yes. Does the debtor serve as plan administrator?

　☐ No Go to Part 10.
　■ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| Rhodes Holdings 401(k) Plan | EIN:  59-2694731 |

Has the plan been terminated?
■ No
☐ Yes

## Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

| Debtor | Litestream Holdings, LLC | Case number *(if known)* | 19-26043 |

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| Life Storage<br>1401 Mercer Ave<br>West Palm Beach, FL 33401 | Patricia Hertvik<br>500 Australian Ave S Ste 648<br>West Palm Beach, FL 33401 | Historical records including invoices and bank statements. | ☐ No<br>■ Yes |

---

**Part 11:  Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

---

**Part 12:  Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

   ■ No.
   ☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

   ■ No.
   ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

---

**Part 13:  Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

Debtor **Litestream Holdings, LLC**                    Case number *(if known)* **19-26043**

■ None

| Business name address | Describe the nature of the business | Employer Identification number |
|---|---|---|
| | | Do not include Social Security number or ITIN. |
| | | **Dates business existed** |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26a.1. **Sally Larson** **460 W Main Street #101** **Blue Ridge, GA 30513** | **2004 to present** |
| 26a.2. **Patricia Hertvik** **500 Australian Ave S #648** **West Palm Beach, FL 33401** | **2014 to present** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1. **Bank United** **7765 NW 148 St** **Hialeah, FL 33016** |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

■ Yes. Give the details about the two most recent inventories.

| | Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| 27.1. | **Dane McWilliams** | **12/31/18** | **108,933.00** |
| | Name and address of the person who has possession of inventory records | | |
| | **Litestream Holdings, LLC** **280 Business Park Circle #412** **Saint Augustine, FL 32095** | | |

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

Debtor    **Litestream Holdings, LLC**                                            Case number *(if known)*    **19-26043**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Paul Rhodes | 500 Australian Ave S #648 West Palm Beach, FL 33401 | Managing Member | 99% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Rhodes Management Company | | Rhodes Mangement Company is an S Corporation of Managing Member Paul Rhodes | 1% |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | Paul Rhodes 500 Australian Ave S #648 West Palm Beach, FL 33401 | | | More funds were loaned into the company than were distributed out within the past year. |
| | Relationship to debtor Managing Member | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true

Debtor    **Litestream Holdings, LLC**       Case number *(if known)*   **19-26043**

and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **December 23, 2019**

**/s/ Paul Rhodes**                             **Paul Rhodes**
Signature of individual signing on behalf of the debtor        Printed name

Position or relationship to debtor    **Managing Member**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
■ Yes

**Litestream Holdings LLC**
**Account  Register**
**For the Period From Aug 1, 2019 to Nov 30, 2019**
**1050-00-0000 - Wells Fargo**

Filter Criteria includes: Report order is by Date.

| Name | Address | | Date of Payment | Amount Paid | Reason for Payment |
|------|---------|--|-----------------|-------------|--------------------|
| AB Distributors Inc | 1116 North Edgewood Ave. | Jacksonville, FL 32254 | 8/1/19 | 2,730.75 | Rent |
| AB Distributors Inc | | | 9/23/19 | 5,461.50 | |
| | | | | **8,192.25** | |
| | | | | | |
| Florida Blue | | | 8/1/19 | 8,400.35 | Group Healtl |
| Florida Blue | | | 9/10/19 | 7,691.46 | |
| Florida Blue | | | 10/10/19 | 7,691.46 | |
| | | | | **23,783.27** | |
| | | | | | |
| Wex Bank | P.O. Box 6293 | Carol Stream, IL 60197 | 8/1/19 | 2,422.77 | Vendor |
| Wex Bank | | | 9/4/19 | 2,055.40 | |
| Wex Bank | | | 9/23/19 | 2,110.37 | |
| Wex Bank | | | 10/28/19 | 2,052.08 | |
| | | | | **8,640.62** | |
| | | | | | |
| GT Leasing | 2810 St. Augustine Rd. | Jacksonville, FL 32207 | 8/2/19 | 7,023.32 | Vehicle Leas |
| GT Leasing | | | 9/12/19 | 3,486.66 | |
| GT Leasing | | | 10/9/19 | 9,000.99 | |
| | | | | **19,510.97** | |
| | | | | | |
| Uniti Fiber | 107 St. Francis St. Ste. 1800 | Mobile, AL 36602 | 8/6/19 | 7,750.00 | Services |
| Uniti Fiber | | | 9/12/19 | 7,750.00 | |
| Uniti Fiber | | | 10/15/19 | 7,750.00 | |
| | | | | **23,250.00** | |
| | | | | | |
| EFTPS | | | 8/7/19 | 5,000.00 | Payroll Tax |
| EFTPS | | | 9/13/19 | 5,000.00 | |
| | | | | **10,000.00** | |
| | | | | | |
| William Haggarty | | | 8/7/19 | 5,321.00 | Other |
| William Haggarty | | | 9/10/19 | 5,321.00 | |
| William Haggarty | | | 10/10/19 | 5,321.00 | |
| | | | | **15,963.00** | |
| | | | | | |
| Florida Power & Light Co | General Mail Facility | Miami, FL 33188 | 8/9/19 | 49.81 | Vendor |
| Florida Power & Light Co | | | 8/9/19 | 38.73 | |
| Florida Power & Light Co | | | 8/9/19 | 43.70 | |
| Florida Power & Light Co | | | 8/9/19 | 37.92 | |
| Florida Power & Light Co | | | 8/9/19 | 44.93 | |
| Florida Power & Light Co | | | 8/9/19 | 37.51 | |
| Florida Power & Light Co | | | 8/9/19 | 45.33 | |
| Florida Power & Light Co | | | 8/9/19 | 28.69 | |
| Florida Power & Light Co | | | 8/9/19 | 34.69 | |
| Florida Power & Light Co | | | 8/9/19 | 46.44 | |
| Florida Power & Light Co | | | 8/9/19 | 48.39 | |
| Florida Power & Light Co | | | 8/9/19 | 67.28 | |
| Florida Power & Light Co | | | 8/9/19 | 92.44 | |
| Florida Power & Light Co | | | 8/9/19 | 1,076.92 | |
| Florida Power & Light Co | | | 8/9/19 | 59.04 | |
| Florida Power & Light Co | | | 8/9/19 | 14.26 | |
| Florida Power & Light Co | | | 8/9/19 | 49.71 | |
| Florida Power & Light Co | | | 8/9/19 | 50.50 | |
| Florida Power & Light Co | | | 8/9/19 | 65.73 | |
| Florida Power & Light Co | | | 8/9/19 | 11.63 | |
| Florida Power & Light Co | | | 8/9/19 | 73.97 | |
| Florida Power & Light Co | | | 8/9/19 | 213.36 | |
| Florida Power & Light Co | | | 8/9/19 | 38.53 | |
| Florida Power & Light Co | | | 8/9/19 | 61.06 | |
| Florida Power & Light Co | | | 8/9/19 | 76.91 | |
| Florida Power & Light Co | | | 8/9/19 | 271.47 | |
| Florida Power & Light Co | | | 8/9/19 | 268.29 | |
| Florida Power & Light Co | | | 9/11/19 | 56.82 | |
| Florida Power & Light Co | | | 9/11/19 | 44.27 | |
| Florida Power & Light Co | | | 9/11/19 | 49.50 | |

**Litestream Holdings LLC**
**Account Register**
**For the Period From Aug 1, 2019 to Nov 30, 2019**
**1050-00-0000 - Wells Fargo**

Filter Criteria includes: Report order is by Date.

| Name | Address | Date of Payment | Amount Paid | Reason for Payment |
|---|---|---|---|---|
| Florida Power & Light Co | | 9/11/19 | 43.48 | |
| Florida Power & Light Co | | 9/11/19 | 50.41 | |
| Florida Power & Light Co | | 9/11/19 | 42.97 | |
| Florida Power & Light Co | | 9/11/19 | 50.99 | |
| Florida Power & Light Co | | 9/11/19 | 34.27 | |
| Florida Power & Light Co | | 9/11/19 | 39.95 | |
| Florida Power & Light Co | | 9/11/19 | 52.10 | |
| Florida Power & Light Co | | 9/11/19 | 54.32 | |
| Florida Power & Light Co | | 9/11/19 | 73.35 | |
| Florida Power & Light Co | | 9/11/19 | 98.70 | |
| Florida Power & Light Co | | 9/11/19 | 1,151.58 | |
| Florida Power & Light Co | | 9/11/19 | 229.48 | |
| Florida Power & Light Co | | 9/11/19 | 41.96 | |
| Florida Power & Light Co | | 9/11/19 | 62.31 | |
| Florida Power & Light Co | | 9/11/19 | 76.96 | |
| Florida Power & Light Co | | 9/11/19 | 51.80 | |
| Florida Power & Light Co | | 9/11/19 | 52.60 | |
| Florida Power & Light Co | | 9/11/19 | 19.03 | |
| Florida Power & Light Co | | 9/11/19 | 60.21 | |
| Florida Power & Light Co | | 9/11/19 | 66.74 | |
| Florida Power & Light Co | | 9/11/19 | 16.63 | |
| Florida Power & Light Co | | 9/11/19 | 74.46 | |
| Florida Power & Light Co | | 9/11/19 | 282.80 | |
| Florida Power & Light Co | | 9/11/19 | 267.78 | |
| Florida Power & Light Co | | 10/9/19 | 53.20 | |
| Florida Power & Light Co | | 10/9/19 | 55.50 | |
| Florida Power & Light Co | | 10/9/19 | 75.15 | |
| Florida Power & Light Co | | 10/9/19 | 101.61 | |
| Florida Power & Light Co | | 10/9/19 | 1,207.00 | |
| Florida Power & Light Co | | 10/9/19 | 58.11 | |
| Florida Power & Light Co | | 10/9/19 | 45.17 | |
| Florida Power & Light Co | | 10/9/19 | 50.41 | |
| Florida Power & Light Co | | 10/9/19 | 44.27 | |
| Florida Power & Light Co | | 10/9/19 | 51.30 | |
| Florida Power & Light Co | | 10/9/19 | 43.87 | |
| Florida Power & Light Co | | 10/9/19 | 51.89 | |
| Florida Power & Light Co | | 10/9/19 | 34.86 | |
| Florida Power & Light Co | | 10/9/19 | 40.98 | |
| Florida Power & Light Co | | 10/9/19 | 61.61 | |
| Florida Power & Light Co | | 10/9/19 | 68.44 | |
| Florida Power & Light Co | | 10/9/19 | 53.10 | |
| Florida Power & Light Co | | 10/9/19 | 53.70 | |
| Florida Power & Light Co | | 10/9/19 | 16.63 | |
| Florida Power & Light Co | | 10/9/19 | 19.12 | |
| Florida Power & Light Co | | 10/9/19 | 76.25 | |
| Florida Power & Light Co | | 10/9/19 | 247.23 | |
| Florida Power & Light Co | | 10/9/19 | 43.77 | |
| Florida Power & Light Co | | 10/9/19 | 65.62 | |
| Florida Power & Light Co | | 10/9/19 | 81.17 | |
| Florida Power & Light Co | | 10/9/19 | 289.82 | |
| Florida Power & Light Co | | 10/9/19 | 245.22 | |
| | | | 9,327.71 | |
| | | | | |
| National Cable TV Coop | P.O. Box 414826 | Kansas City, MO 64141 | 8/12/19 | 993.54 Services |
| National Cable TV Coop | | 9/5/19 | 2,603.84 | |
| National Cable TV Coop | | 9/11/19 | 256.17 | |
| National Cable TV Coop | | 9/23/19 | 52,949.89 | |
| National Cable TV Coop | | 10/30/19 | 10,000.00 | |
| National Cable TV Coop | | 11/4/19 | 42,212.91 | |
| | | | 109,016.35 | |
| | | | | |
| Dennis W Hollingsworth | P.O. Box 9001 | St. Augustine, FL 32085 | 8/16/19 | 9,930.05 Tax |
| Dennis W Hollingsworth | | 9/12/19 | 5,000.00 | |
| Dennis W Hollingsworth | | 10/28/19 | 5,000.00 | |
| | | | 19,930.05 | |

**Litestream Holdings LLC**
**Account Register**
**For the Period From Aug 1, 2019 to Nov 30, 2019**
**1050-00-0000 - Wells Fargo**

Filter Criteria includes: Report order is by Date.

| Name | Address | | Date of Payment | Amount Paid | Reason for Payment |
|------|---------|--|-----------------|-------------|--------------------|
| Florida Deparment of Reven | 5050 W. Tennessee St. | Tallahassee, FL 32399 | 8/19/19 | 3,375.76 | Tax |
| Florida Deparment of Revenue | | | 8/19/19 | 125.00 | |
| Florida Deparment of Revenue | | | 8/19/19 | 887.42 | |
| Florida Deparment of Revenue | | | 8/19/19 | 3,036.39 | |
| Florida Deparment of Revenue | | | 9/19/19 | 62.49 | |
| Florida Deparment of Revenue | | | 9/20/19 | 6,702.32 | |
| Florida Deparment of Revenue | | | 9/20/19 | 888.13 | |
| Florida Deparment of Revenue | | | 10/21/19 | 6,869.14 | |
| Florida Deparment of Revenue | | | 10/21/19 | 899.06 | |
| Florida Deparment of Revenue | | | 10/25/19 | 55.43 | |
| | | | | **22,901.14** | |
| | | | | | |
| GLDS | 306 Seippel Blvd. | Beaver Dam, WI 53916 | 8/21/19 | 7,050.39 | Services |
| GLDS | | | 9/11/19 | 7,050.39 | |
| GLDS | | | 10/9/19 | 7,096.20 | |
| | | | | **21,196.98** | |
| | | | | | |
| Lindell & Farson PA | 12276 San Jose Blvd. Ste. 126 | Jacksonville, FL 32223 | 9/13/19 | 14,674.43 | Legal |
| Lindell & Farson PA | | | 10/11/19 | 7,499.13 | |
| | | | | **22,173.56** | |

# United States Bankruptcy Court
## Southern District of Florida

In re   **Litestream Holdings, LLC**                                     Case No.   **19-26043**

                                                    Debtor(s)            Chapter   **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
| --- | --- | --- | --- |

**-NONE-**

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Managing Member** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   **December 23, 2019**                              Signature   **/s/ Paul Rhodes**

                                                                      **Paul Rhodes**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

# United States Bankruptcy Court
## Southern District of Florida

In re    __Litestream Holdings, LLC__                 Case No.   __19-26043__

                      Debtor(s)               Chapter    __11__

# VERIFICATION OF CREDITOR MATRIX

I, the Managing Member of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:    __December 23, 2019__             __/s/ Paul Rhodes__

                                      __Paul Rhodes__/__Managing Member__
                                      Signer/Title

# United States Bankruptcy Court
## Southern District of Florida

In re    **Litestream Holdings, LLC**            Case No.   **19-26043**

Debtor(s)          Chapter    **11**

## DEBTOR'S NOTICE OF COMPLIANCE WITH REQUIREMENTS FOR AMENDING CREDITOR INFORMATION

This notice is being filed in accordance with Local Rules 1007-2(B), 1009-1(D), or 1019-1(B) upon the filing of an amendment to the debtor's lists, schedules or statements, pursuant to Bankruptcy Rules 1007, 1009, 1019 or 5010-1(B). I certify that:

[x]    The paper filed **adds** creditor(s) as reflected on the <u>attached list</u> (include name and address of each creditor being added). I have:
1. remitted the required fee (unless the paper is a Bankruptcy Rule 1019(5) report);
2. provided the court with a supplemental matrix **of only the added creditors** on a CD or memory stick in electronic text format (ASCII or MS-DOS text), or electronically uploaded the added creditors in CM/ECF;
3. provided notice to affected parties, including service of a copy of this notice and a copy of the §341 or post conversion meeting notice [see Local Rule 1009-1(D)(2)] and filed a certificate of service in compliance with the court [see Local Rule 2002-1(F)]; and
4. filed an amended schedule(s) and summary of schedules; and
5. filed a motion to reopen accompanied by the required filing fee (if adding creditors pursuant to Local Rule 5010-1(B))

[ ]    The paper filed **deletes** a creditor(s) as reflected on the <u>attached list</u> (include name and address of each creditor being deleted). **I have:**
1. remitted the required fee;
2. provided notice to affected parties and filed a certificate of service in compliance with the court [see Local Rule 2002-1 (F)]; and
3. filed an amended schedule(s) and summary of schedules.

[ ]    The paper filed **corrects** the name and/or address of a creditor(s) as reflected on the <u>attached list</u>. **I have:**
1. provided notice to affected parties, including service of a copy of this notice and a copy of the §341 or post conversion meeting notice [see Local Rule 1009-1(D)(2)] and filed a certificate of service in compliance with the court [see Local Rule 2002-1 (F)]; and
2. filed an amended schedule(s) or other paper.

[ ]    The paper filed **corrects** schedule D or E/F amount(s) or classification(s). **I have:**
1. remitted the required fee;
2. provided notice to affected parties and filed a certificate of service in compliance with the court [see Local Rule 2002-1 (F)]; and
3. filed an amended schedule(s) and summary of schedules.

[ ]    None of the above apply. The paper filed does not require an additional fee, a supplemental matrix, or notice to affected parties. It ☐ does ☐ does not require the filing of an amended schedule and summary of schedules.

I also certify that, if filing amended schedules, Bankruptcy Form 106 "Declaration About an Individual Debtor's Schedules" (signed by both debtors) or Bankruptcy Form 202 , "Declaration Under Penalty of Perjury for Non-Individual Debtors" has been filed as required by Local Rules 1007-2(B), 1009-1(A)(2) and (D)(1), or 1019-1(B).

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Dated:   12/23/19

/s/ Robert C. Furr

Attorney for Debtor (or Debtor, if pro se)



**Robert C. Furr 210854**

Print Name & Florida Bar Number

/s/ Paul Rhodes

**Paul Rhodes**

Debtor

**2255 Glades Rd.**
**Suite 301E**
**Boca Raton, FL 33431**

Address

**561-395-0500 Fax: 561-338-7532**

Phone Number

**Added Creditors:**

Conserv
200 CrossKeys Office Park
Fairport NY 14450

NPAC Billing Operations
c/o iconnectiv
100 Somerset Corporate Blvd Center
Bridgewater NJ  08807

ExxonMobil
Wex Bank
PO box 6293
Carol Stream IL  60197-6293

# EXHIBIT G

Page 1

```
 1           UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF FLORIDA
 2
 3
    IN RE:           CASE NO. 19-26043-MAM
 4
    LITESTREAM HOLDINGS, LLC,
 5
            Debtor.
 6    _____/
 7
 8           341 MEETING OF CREDITORS
 9              January 7, 2020
10      The above-entitled cause came on for a Section 341
11  Meeting of Creditors before HEIDI FEINMAN, Trial Attorney,
12  Office of the U.S. Trustee, Department of Justice, in the
13  UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN
14  DISTRICT OF FLORIDA, at 1515 North Flagler Dr., West Palm
15  Beach, Palm Beach County, Florida on January 7, 2020,
16  commencing at or about 11:30 a.m., and the following
17  proceedings were had.
18
19
20
21
22
23
24      Transcribed from a digital recording by:
           Cheryl L. Jenkins, RPR, RMR
25
```

Page 2

```
 1
 2
 3           APPEARANCES:
 4
 5      HEIDI FEINMAN, Trial Attorney
        Office of the U.S. Trustee
        Department of Justice
 6
 7
        FURR & COHEN, by
 8      ALVIN S. GOLDSTEIN, Esquire
        On behalf of the Debtor
 9
10
        KOZYAK TROPIN & THROCKMORTON, by
11      DAVID L. ROSENDORF, Esquire
        On behalf of Lennar Homes
12
13           - - - - - - -
14
15           WITNESS
    Paul Rhodes                      Page
16    Examination by Ms. Feinman    4,56
      Examination by Mr. Rosendorf    41
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1           MS. FEINMAN:  This is the 341 Meeting for
 2  Litestream Holdings, LLC, Case Number 19-26043.  It is
 3  January 7, 2020, about 11:45 a.m.  My name is
 4  Heidi Feinman.  I'm the attorney with the U.S. Trustee's
 5  Office who is handling this case.
 6           This is a meeting of the debtor, the
 7  creditors, and the U.S. Trustee pursuant to Section 341 of
 8  the Bankruptcy Code which allows us to examine the debtor,
 9  go through the schedules, and get some background
10  information.
11           It is being recorded.  We'll keep a copy of
12  the recording in our office should anybody care to get a
13  copy of it.
14           Sir, if you could state your full name?
15           MR. RHODES:  Paul Andrew Rhodes.
16           MS. FEINMAN:  And what is your position with
17  the company?
18           MR. RHODES:  CEO.
19           MS. FEINMAN:  And are you the managing
20  member as well?
21           MR. RHODES:  I am.
22           MS. FEINMAN:  Okay.  So, Mr. Rhodes, what
23  I'm going to do is swear you in, ask you some questions,
24  go through the schedules, get some background information.
25           When I get finished, I'll let creditors here
```

Page 4

```
 1  ask questions they may have.  I'd just ask that you state
 2  your name and who you represent so we can get it on the
 3  record.
 4           If you'll raise your right hand?
 5           Do you swear or affirm the answers you're
 6  about to give today are the truth, the whole truth and
 7  nothing but the truth?
 8           MR. RHODES:  I do.
 9  Thereupon,
10           PAUL RHODES,
11  having been first duly sworn, was examined and testified
12  as follows:
13           MS. FEINMAN:  Mr. Goldstein, do you just
14  want to make an appearance?
15           MR. GOLDSTEIN:  Sure.  Alvin Goldstein,
16  Furr & Cohen, for the debtor.
17           EXAMINATION
18  BY MS. FEINMAN:
19      Q.    Okay.  Mr. Rhodes, did you go to Furr &
20  Cohen and discuss the filing of a Chapter 11 bankruptcy
21  case for Litestream Holdings?
22      A.    I did.
23      Q.    And did you authorize Furr & Cohen to file
24  the petition?
25      A.    I did.
```

1 (Pages 1 to 4)

Page 5

1    Q.    And did you sign that petition?
2    A.    I did.
3    Q.    And did you provide the financial
4  information that was used by Furr & Cohen to prepare the
5  schedules and Statement of Financial Affairs?
6    A.    My controller did, and I reviewed them.
7    Q.    Okay. So you reviewed them. Did you sign
8  them, sign the documents?
9    A.    I don't recall.
10   Q.    Did you -- you reviewed the documents that
11  Furr & Cohen provided you?
12   A.    I reviewed the debtor-in-possession
13  financing budget.
14   Q.    Okay. I'm going to hand you what is filed
15  with the court as Document 29.
16   A.    Sure.
17   Q.    I want you to take a look at this.
18   A.    Okay.
19         Okay. Go ahead.
20   Q.    Go ahead and take a look at it, and let me
21  know if you've seen this before.
22   A.    I have.
23   Q.    Okay, and did you, did you sign the
24  document? This is going to have an electronic signature
25  on it, but did you --

Page 6

1    A.    I did.
2    Q.    -- sign it?
3    A.    Yes.
4    Q.    Your signature, and did you authorize the
5  firm to file this on behalf of Litestream?
6    A.    I did.
7    Q.    Okay. To the best of your knowledge is this
8  true and correct?
9    A.    As far as I know. I mean, it was prepared
10  very capably, I think, by Lyndia, in the Furr & Cohen
11  office, based on information, as far as I know, that my
12  controller provided her.
13   Q.    As you sit here today, do you think that
14  there are any changes that need to be made?
15   A.    Not that I'm aware of.
16         MS. FEINMAN: Okay. Mr. Goldstein, do you
17  have any opening comments that you want to make?
18         MR. GOLDSTEIN: Litestream is in the cable
19  and Internet business. They had previously had operations
20  both in the St. Augustine area, and in the Naples area.
21         About a year ago they sold off the Naples
22  operation, and realized about 6 million or so for that,
23  which largely went to pay down the BankUnited debt, and
24  the remaining operations, because of the economies of
25  scale, just at this point don't make sense to continue

Page 7

1  operations. It doesn't seem to be something that can be a
2  profitable enterprise.
3         THE WITNESS: So I would disagree with that.
4         THE COURT: Wait, wait.
5         MR. GOLDSTEIN: Okay.
6  BY MS. FEINMAN:
7    Q.    Okay. Go ahead.
8    A.    Yeah, so the business is profitable. It's a
9  small business at this point because we sold two-thirds of
10  it. It was profitable this month on an operating basis.
11  It's just at this point -- we tried to sell the entirety
12  of our assets, business operations in Florida.
13         As Mr. Goldstein said, we sold the Naples,
14  the larger part of the business, and so the remainder is
15  not a business that makes sense for a sole proprietor to
16  keep. It makes more sense to be added on to another
17  existing cable operation that has more scale, but it is a
18  profitable small business. It's got 13 employees, and I'm
19  sure you've got other questions around that, and so we had
20  put it up for sale --
21   Q.    Uh-huh.
22   A.    -- with a broker, who was fielding
23  interested parties' inquiries, and we had some interested
24  parties.
25         The bank, BankUnited, suggested that the

Page 8

1  most expeditious way to sell the business would be to put
2  it in bankruptcy and have a 363 sale, and so prompted by
3  some discussions with the bank, we choose this as an
4  expeditious way to sell this small business. That's the
5  truth.
6    Q.    Okay. Who are the other members of the
7  entity?
8    A.    It's only myself, as to 99 percent, if I
9  recall correctly, and a management company that I own, I
10  think it's called Rhodes Holdings, with 1 percent.
11   Q.    Okay, and Rhodes Holding, you're the sole
12  shareholder of?
13   A.    Yes.
14   Q.    That's a corporation?
15   A.    It is.
16   Q.    Okay, and when was Litestream Holdings, LLC
17  formed?
18   A.    Around May of 2004.
19   Q.    Okay. Now, I understand that it is a cable
20  and Internet business, but what exactly does it do?
21   A.    We provide video, t.v., Internet and phone
22  services to residents in St. Johns County, Florida,
23  Southern Jacksonville, doing business both directly with
24  the homeowners' associations, and with individuals.
25   Q.    Okay, and where does Litestream Holdings --

2 (Pages 5 to 8)

Page 9

1  how do they get the video, t.v., the service, do you
2  license out, or you purchase it from other --
3      A.   We --
4      Q.   -- cable companies?
5      A.   Correct.
6      Q.   Internet companies?
7      A.   Yeah, we do.  For the most part we obtain
8  our video feed, our video programing from the National
9  Cable Television Co-op, of which we're a member, the NCTC.
10     Q.   Uh-huh.
11     A.   There are some channels that the NCTC does
12  not distribute.  In those cases we enter into program
13  agreements directly with the programers, but in all cases
14  the video comes through satellite, into a farm of seven
15  large satellite dishes.
16     Q.   Okay.  What about phones, you said?
17     A.   Phone, yeah, Internet and phone.  Phone we
18  resell wholesale service provided to us by a company
19  called Momentum, which is a substantial phone service
20  provider and phone service wholesaler.
21     Q.   Uh-huh.
22     A.   They're based in Alabama, and then finally
23  Internet, we receive Internet bandwidth on a large scale
24  basis from a firm called Unity, four gigabytes of
25  bandwidth, which we then redistribute.

Page 10

1      Q.   Okay.  Do you -- do you, Mr. Rhodes, have
2  other entities that do the same thing in which you have an
3  interest?
4      A.   No.
5      Q.   So this is it?  This is --
6      A.   It is.
7      Q.   Okay.  Do you have other businesses that
8  provide you with income, though?
9      A.   Yes.
10     Q.   Okay.  Do you receive a salary from
11  Litestream?
12     A.   I did up until, I'd have to check, maybe two
13  years ago.
14     Q.   Okay, and does -- or before the case was
15  filed, let's talk about before the case was filed, did
16  Litestream provide any -- cover any of your fees, your
17  health, your car, your mortgage, life insurance?
18     A.   (No verbal response.)
19     Q.   No benefits?
20     A.   No.
21     Q.   Retirement?
22     A.   No.
23     Q.   Okay, and you said there -- how about since
24  the case was filed?
25     A.   No.

Page 11

1      Q.   Okay.  You said there were 13 employees?
2      A.   Approximately.  I just read that on the
3  form.  That's about right.
4      Q.   Is there a payroll service that you use, or
5  are you -- is there in-house payroll?
6      A.   I think we use a payroll service.  I think
7  that the payroll is done through a service.
8      Q.   Who would know that information?
9      A.   Sally Larson.
10     Q.   And who --
11     A.   Our controller.
12     Q.   L-a-r-s-e-n or o-n?
13     A.   S-o-n.
14     Q.   And how long has she been your controller?
15     A.   Forever.  Forever.  I won't tell you,
16  because she wouldn't want me to.  She's worked for me for
17  31 years.
18     Q.   Okay, but since this company was formed in
19  2004?
20     A.   Don't tell her that I told you that.
21          Yes.
22     Q.   So 15 years at least, okay.
23     A.   Absolutely.
24     Q.   And is she a salaried employee?
25     A.   I don't know whether Litestream has paid her

Page 12

1  salary for some time.  That's something I'd have to ask
2  her.
3          She gets paid a salary, but I'm not sure
4  that I had Litestream cover that expense.
5      Q.   So she does work for other businesses --
6      A.   Yes.
7      Q.   -- that you have?
8      A.   Yes.
9      Q.   Okay.
10     A.   She used to be salaried by Litestream
11  certainly.
12     Q.   And are you a resident of Palm Beach County?
13     A.   Yes.
14     Q.   So there were -- there are two spaces, two
15  locations, there is St. Augustine and West Palm.  Are both
16  those premises still being utilized?
17     A.   Yes.
18     Q.   Okay, and where are most of the employees,
19  in St. Augustine or here in West Palm?
20     A.   St. Augustine.
21     Q.   Is Ms. Larson in St. Augustine or here?
22     A.   No, she's in neither.  She's in Georgia.
23  Her husband retired, and we got her an office up there.
24     Q.   So she works remotely, so to speak?
25     A.   She does.

Page 13

1      Q.   And so the office that's in West Palm, is
2  that solely for Litestream?  Are there other businesses of
3  yours that work out of that office?
4      A.   It's solely for Litestream at this point,
5  and there is an employee there who is, I think, on the
6  Litestream payroll.
7      Q.   So there is only one employee there?
8      A.   Yes.
9      Q.   How big is the space?
10     A.   It's an executive suite with two offices.  I
11 think it's 1,000 square feet or less.
12     Q.   Okay, and do you use that space yourself?
13     A.   I do not.
14     Q.   Okay.  Do you know how much the rent is?
15     A.   1,500 bucks, or at least it was years ago
16 when I last recall.
17     Q.   And is it -- to the best of your knowledge,
18 are you current on the rent up there?
19     A.   I would think so.
20     Q.   And then the St. Augustine location, you
21 believe there is, what, 12 employees, 10 employees there?
22     A.   I think 13 is -- the 13 that's listed in the
23 documents here sounds right.
24     Q.   Okay, and these employees have been notified
25 of the bankruptcy, correct?

Page 14

1      A.   I have only spoken with the general manager
2  there.  I don't know who he's notified.
3      Q.   And who is the general manager?
4      A.   Dane McWilliams.
5      Q.   Does Mr. McWilliams know that it's your
6  intention to sell the business?
7      A.   He does.  Yeah, as I mentioned, we have been
8  dealing with prospective buyers for some time.
9      Q.   Okay.  Has anybody made an offer?
10     A.   We got one offer, I believe, via an email.
11 Not really much of a formal offer, but you know, I'm not
12 sure that that would rank as an offer.
13     Q.   Well, was there a purchase price?
14     A.   It wasn't an email to me, but it was an
15 email to the broker that we have engaged.
16     Q.   Uh-huh.
17     A.   I think she just told us about it.  I didn't
18 receive the email.
19     Q.   Okay, and who was the broker?
20     A.   Her name is Pat Williams.
21     Q.   And is she, like, an expert in this
22 industry?
23     A.   She is.
24     Q.   Okay.
25     A.   Yes, she's worked in the industry for a long

Page 15

1  time.
2      Q.   So is she with a company?
3      A.   I think she's solo.  I think she worked for
4  cable companies over the years, but to my knowledge she
5  works solo out of her home as a broker.
6      Q.   And is it your intention to use her as a
7  broker since the case was filed, postpetition, or --
8      A.   I mean, I like her, and I believe she has
9  expertise.  I don't know how much familiarity she has with
10 the mechanics of a stalking horse and prompting a
11 successful sale.  So I would use her as a consultant to
12 assist, and to be compensated, but whether as a broker, or
13 as an assistant, to furnish information to buyers, to help
14 keep the data bowl up to date.
15     Q.   Okay, and did you use her to sell the
16 Naples --
17     A.   No.
18     Q.   How did the Naples portion of the business
19 get sold?
20     A.   There was a natural buyer, Summit Broadband,
21 with whom I had been negotiating, been discussing the
22 sale, they had expressed interest in selling -- in buying
23 it.  They had substantial operations in Naples.
24     Q.   So it was direct between you and -- you and
25 the people at Summit, no broker, no --

Page 16

1      A.   There was -- so all the dealings were direct
2  between me and -- and they had at Summit, I had a
3  consultant, broker, or whatever he construed himself to
4  be, assist me, a guy who had knowledge of Summit, but the
5  transaction was direct between us and Summit.
6      Q.   And when did that close?
7      A.   It closed October 5th of '18.
8      Q.   And the sales price was 6 million?
9      A.   Six million seventy five.
10     Q.   And did all of that go to BankUnited?
11     A.   Every nickel.
12         MS. FEINMAN:  Who represents BankUnited, do
13 you know?
14         MR. GOLDSTEIN:  Peter Levitt.
15 BY MS. FEINMAN:
16     Q.   Okay.  Do you know how much the broker
17 received, or the one who assisted you?
18     A.   They -- BankUnited was not willing to
19 allocate any proceeds to the broker, or for that matter,
20 this was surprising to me, to the attorneys that closed
21 the deal for us.
22         MR. GOLDSTEIN:  The brokers (inaudible) --
23         MS. FEINMAN:  Okay.  Okay.
24         THE WITNESS:  I'm not sure whether I'd --
25 calling him a broker might be the wrong thing, because

4 (Pages 13 to 16)

Page 17

1  he's -- I just spoke to him, to find out he's not a
2  broker, not a licensed business broker. So, whatever,
3  but, you know, so we thought we'd be paying, starting with
4  the attorney, attorney's fees for the attorneys that
5  documented the transaction that made the sale happen.
6  BankUnited refused to allow a dollar to be allocated for
7  attorney's fees.
8  Q.  And who are the attorneys?
9  A.  Tom Lozer (phonetic), and a mensch named
10  Jeffrey Falkman (phonetic), who has been a prince about
11  this.  It's not a very proud story.
12  Q.  And, Mr. Rhodes, what's your background?
13  A.  Well, it's a complicated answer, but I'll --
14  Q.  Okay.
15  A.  -- fill in a few blanks.
16      I got a couple degrees in physics, and a PhD
17  in earth science, on the one hand.  On the other hand I
18  was a substantial land developer in St. Lucie County for
19  years, you know, developed communities, land investment
20  partnerships I think is what I did most of, and ended up
21  building a cable system in a 700-acre -- 700 home
22  community that I built, that I developed, which was my
23  entry into the cable business in 1999 and 2000.
24      I wanted to diversify, I bought Litestream's
25  assets as the stalking horse myself in the sale of what

Page 18

1  was a subsidiary of Tampa Electric in 2004 and, you know,
2  had expanded the cable business, over these years
3  continued as a land developer through the boom.
4  Q.  Are you still developing, still in the land
5  development --
6  A.  No.
7  Q.  No?
8  A.  No, I wound that down.
9  Q.  Okay.  Have you closed all the prepetition
10  bank accounts, and opened up debtor-in-possession
11  accounts?
12  A.  I don't know everything that we've done.  I
13  believe that we did open up the DIP account last week, or
14  very recently.
15  Q.  Do you know what account -- what bank that's
16  at?
17  A.  Sadly no.  All this -- I don't.
18  Q.  Okay.
19  A.  And I don't know if we closed accounts, but
20  again, I'm -- I'm just not knowledgeable.
21      MS. FEINMAN:  We have a hearing on Friday --
22      MR. GOLDSTEIN:  Yeah.
23      MS. FEINMAN:  -- and so the bank accounts,
24  do you know where we are with that?
25      MR. GOLDSTEIN:  DIP accounts were opened,

Page 19

1  and I think the others are -- the prepetitions are just
2  kind of winding down, because they have, like, ACHs and
3  AFTs filtered through them.
4      MS. FEINMAN:  Okay.
5      MR. GOLDSTEIN:  But I think all they're
6  doing is money goes in and --
7      MS. FEINMAN:  Is transferred out.
8      MR. GOLDSTEIN:  -- is transferred out, yeah.
9      MS. FEINMAN:  Okay.
10      THE WITNESS:  Yes, just to elaborate, so
11  these retail customers, the individual that has a phone
12  service with us, or HBO, those would be enumerable, little
13  electronic payments, and would come into these accounts,
14  and so to unwind that and transfer it, I don't know what's
15  involved, but --
16  BY MS. FEINMAN:
17  Q.  That's what your lawyer is there for, to
18  help you work that out.
19  A.  Yep.
20      MS. FEINMAN:  Okay.
21      MR. GOLDSTEIN:  PNC Bank, they're the
22  debtor-in-possession account.
23      MS. FEINMAN:  Okay, PNC.  You've sent all of
24  this to Lemare (phonetic) already?
25      MR. GOLDSTEIN:  Yes.

Page 20

1      MS. FEINMAN:  I just, all I have are his
2  written notes, that's why I'm asking.
3  BY MS. FEINMAN:
4  Q.  Tax returns, when was the last tax return
5  that was filed?
6  A.  We're behind on those, in terms of the
7  corporate returns.  We roll up the P&L into my personal
8  return.
9  Q.  Uh-huh.
10  A.  But the corporate return, we haven't filed
11  since the 2016 tax year, which we filed it in October
12  of 2017.
13  Q.  What's the fiscal year end?
14  A.  Calendar, December 31.
15  Q.  Okay.  Who is Lindell & Farson?
16  A.  Lindell & Ferrill (sic), is it?  They're
17  attorneys in St. Johns County, Mike Lindell, they've
18  defended Litestream capably in an action with one of our
19  HOAs.
20  Q.  And they're still holding a retainer, or
21  have they taken that retainer as --
22  A.  You know, I don't know.  We gave them a
23  $10,000 retainer.  I don't know what the net is.
24  Q.  Do you know when you gave them the retainer?
25  A.  Sometime in, I'm going to guess it was late

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

Page 21

1  2018, but I'm not certain.
2      Q.   Okay.  How collectible are the accounts
3  receivable, do you know?
4      A.   It would depend on the aging.  I don't --
5  you know, the AR that's 30, 60 days, I think would be
6  quite collectible.
7      Q.   Well, according to this, it says of the
8  450,000, about 78 of it is 90 days old or less, and about
9  350 is over 90 days old.
10     A.   Yeah.  I doubt that -- I'd have to look, I'd
11 have to look at the accounts.
12     Q.   What do you do with the -- do you have,
13 like, a collection agency that you send the past due --
14     A.   No, we call people.
15     Q.   Call people?
16     A.   Yep.
17     Q.   So these are --
18     A.   We have a call center, and they call.
19     Q.   Okay.  So when you have a -- when you
20 provide Internet, cable, telephone, whatever, to an HOA or
21 a house, a subdivision, are you contracting with the
22 individual homeowners, or are you contracting with the
23 management company?
24     A.   So most of our revenue, two-thirds of it at
25 least, is a contract with the homeowners' association --

Page 22

1      Q.   Okay.
2      A.   -- under what in the industry is called a
3  bulk deal, which is a wholesale contract.
4      Q.   Uh-huh.
5      A.   The HOA gets, gets on behalf of their
6  owners, who they assess, the HOA gets a rate that's
7  perhaps half of a retail rate.
8      Q.   Uh-huh.
9      A.   And in turn we, the cable company, get to --
10 are in entitled to payment on every single home in the
11 HOA, even those that don't watch t.v. --
12     Q.   Uh-huh.
13     A.   -- 12 months a year, even homes that are
14 seasonal, and are only in town three months a year, like,
15 people pay for the pool 12 months a year even if they're
16 not there.
17     Q.   But who pays you, is it the HOA --
18     A.   HOA.
19     Q.   -- that pays you?
20     A.   The HOA.
21     Q.   Okay.
22     A.   And then as to the other 30, 35 percent of
23 our revenue, those are individual -- transactions with
24 individual homeowners for extras.  So the HOA would pay
25 for the basic video service, and the basic Internet

Page 23

1  service, and then if an individual homeowner wants
2  something collective, like HBO, or if they want a DVR, in some
3  cases, or they want phone service, then the individual
4  homeowner would enter into a service agreement with us,
5  and we would bill them, or get an ACH from the individual.
6      Q.   Okay, and are the HOAs of this -- of the AR,
7  the HOAs the ones that are behind, or is it the
8  individual --
9      A.   No.  Well --
10     Q.   -- homeowner?
11     A.   -- there is one HOA that is -- well, I'd
12 have to look at the composition, but there is one HOA, the
13 one in the litigation that Mike Lindell was handling,
14 that's a good 180, $190,000 in arrears.
15     Q.   Uh-huh.
16     A.   They filed an action to try to cancel their
17 contract.  Lindell was defending us in that matter.  They
18 have stopped paying.
19     Q.   Uh-huh.
20     A.   That might be, I don't know if it's in
21 the --
22     Q.   And have you ceased servicing that, that
23 HOA?
24     A.   No.
25     Q.   I mean, you're still providing service under

Page 24

1  their --
2      A.   We're still under the agreement.  I mean,
3  we'd be remiss to --
4      Q.   Okay.  So there has not been a termination
5  of the contract?
6      A.   No, no.  They have sued to ask the Court to
7  terminate it.  We have defended it, a counterclaim, and of
8  course among the counterclaims is the payment --
9      Q.   The unpaid fees?
10     A.   -- of the fees, right.  So, I think that's a
11 good claim.
12     Q.   Uh-huh.
13     A.   And furthermore what's at stake there is not
14 only the $200,000, roughly, but also the 200 -- the
15 contract assets are substantial.  So that claim could be
16 (inaudible).
17     Q.   When you enter into contracts with HOAs to
18 provide the service, is it -- it's a multiyear contract?
19     A.   Yes.
20     Q.   What's the general term?
21     A.   The initial term is at least 10 years.
22 Often there is an extension, extension periods.  So
23 they're long term contracts.
24     Q.   And how many HOAs do you believe you have
25 right now?

6 (Pages 21 to 24)

Page 25

1    A.   Four, four that are in HOA agreements.
2    Q.   Including the one that hasn't paid?
3    A.   That's right.
4    Q.   Okay.  There are one, two, three, four,
5  five, five trucks of some sort, leased vehicles, and a
6  trailer.  Are they all being utilized?
7    A.   Yes.
8    Q.   And they all are located where, up in
9  St. Johns County?
10    A.   Yes.
11    Q.   And the employees that use these vehicles,
12  do they take them home with them at the end of the day, or
13  do they bring them back to the office?
14    A.   I believe they leave them at the office, but
15  I'm not certain.
16    Q.   Okay, and they're all insured?
17    A.   Yes.
18    Q.   And it looks like they're all leased.  Are
19  the lease payments current?
20    A.   To my knowledge.
21    Q.   Okay, and you don't drive any of these
22  vehicles, do you?
23    A.   No, no.
24    Q.   Okay, and to the best of your knowledge are
25  they in good condition, the cars, or trucks?

Page 26

1    A.   I don't know.
2    Q.   When is the last time you were up in
3  St. Johns County, in the office?
4    A.   I'm there for a visit twice a year, roughly,
5  two or three times a year.  So perhaps two months ago.
6    Q.   The websites that you have, mylitestream.net
7  and mylitestream.com, are those used to make payments?
8    A.   I think so.
9    Q.   Okay.
10    A.   I believe so.
11    Q.   So if I were a customer, I could make my
12  monthly payment that way or --
13    A.   Check your bill.
14    Q.   Right.
15    A.   Yes.
16    Q.   Okay.  Is there a privacy policy that you
17  have on those websites?
18    A.   I don't know.  In terms of a website privacy
19  policy, you mean is the information --
20    Q.   In other words --
21    A.   -- the individual customer's information
22  kept confidential?
23    Q.   Uh-huh, and you don't sell --
24    A.   Oh, no.
25    Q.   -- customer lists?

Page 27

1    A.   No, we don't.
2    Q.   Okay.  If you're going to sell, you need to
3  be prepared to deal with that, with the consumer privacy
4  situation, okay?
5         Who or what is Level 3?
6    A.   Level 3 is now part of Century Link.  We
7  dealt with them both in -- they're an independent company,
8  a very large independent company, and then post the sale
9  to Centry Link, they're the nation's largest fiber service
10  provider, to my knowledge.
11    Q.   And you have a cause of action against them?
12    A.   We do, we do.
13    Q.   And where is that, have you filed -- you've
14  already filed a complaint?
15    A.   We have not.
16    Q.   Okay.  What about Palencia North POA?
17    A.   So we have a claim, not filed, but we have a
18  claim that we presented them with months ago for
19  underpayment of our fees.
20    Q.   And what's the status of that?
21    A.   They refused to meet with us.
22    Q.   And how much do you think they've underpaid?
23    A.   Well, the letter that we furnished, from
24  memory, is about 230,000 that we could document, not
25  including interest or potential --

Page 28

1    Q.   And when you say there is a letter, was it
2  sent by an attorney?
3    A.   No, no, this was an amicable letter sent by
4  us to the property management company.
5    Q.   Do you -- before the case was filed, did you
6  have an attorney that would handle these kind of disputes,
7  collections?
8    A.   Well, you know, Ferrill -- Lindell & Ferrill
9  would have filed this, perhaps if not for the bankruptcy.
10    Q.   So they're your general counsel, so to
11  speak?
12    A.   Well, I mean, they -- yeah, I mean, I
13  wouldn't say that, but they're local to St. Johns
14  County --
15    Q.   Uh-huh.
16    A.   -- and they're just, they're litigation
17  counsel.
18    Q.   Okay.  Listed in your schedules, this is
19  Litestream's assets, I'm just -- because I'm not familiar
20  with the terminology, it says "passings built", what does
21  that mean?
22    A.   Yeah, that's a term of art in this business.
23  So, cable, physical assets consist of fiber, amplifiers,
24  splitters, multiplexers, pedestals, which is the little
25  grey thing in front of your house when you cut the lawn,

7 (Pages 25 to 28)

Page 29

1  that's called plank, and when you build that, you know,
2  you're now in a position to serve a home --
3       Q.   Uh-huh.
4       A.   -- by simply connecting it.
5       Q.   Right.
6       A.   So "passings built" refers to the number of
7  homes for which all that plank is in place, and I think in
8  that schedule, the passings built refer to passings --
9  homes that are ready to be served, the infrastructure in
10  place that are not yet subscribers, but are available to
11  be connected.  In other words, it's an opportunity, it's
12  an asset.
13       Q.   So the Palencia Property Owners Association
14  of St. Johns County, you have 1,360 passings built.  That
15  doesn't mean you have 1,360 clients --
16       A.   Right.  So --
17       Q.   -- or individual --
18       A.   Yeah.
19       Q.   -- people who are utilizing your services?
20       A.   In that case we have 600 subscriber homes.
21       Q.   Uh-huh.
22       A.   So perhaps half of our passings we provide
23  service to.  The other half are -- the passings are
24  infrastructure that we own --
25       Q.   Uh-huh.

Page 30

1       A.   -- it's obviously an asset with some value.
2       Q.   And when the fiber is -- when you do all
3  that mapping, and you put it in, it's all underground --
4       A.   Yes.
5       Q.   -- correct?
6            Is it something that you contract with prior
7  to the building of the subdivision?
8       A.   It can go either way.  So, we've done a lot
9  of construction ahead of the homes.  So we've done
10  Palencia North, where we built 650 homes worth of
11  infrastructure --
12       Q.   Uh-huh.
13       A.   -- generally ahead of the homes being built,
14  but in other communities we have, particularly in Naples,
15  gone in when the Comcast contract expired, and the
16  community wanted someone else, and then we would build
17  when the home is already there.  So, we've done both.
18       Q.   Do you utilize Comcast fiber, or their
19  wiring, or do you have to go and dig all new --
20       A.   Yes.
21       Q.   -- trenches or whatever?
22       A.   Exactly, you have to trench and put in new
23  fiber, and that's one of the benefits for the community,
24  because the new fiber is fresher, and less cut up and
25  patched, and of more modern design and capacity.

Page 31

1       Q.   Do you remove the old --
2       A.   No.
3       Q.   -- or you just -- it's a separate,
4  completely separate -- is it in the same area, or on top
5  of it, and you just --
6       A.   Yes, so when a utility comes and builds --
7  or a cable company comes and builds, there is a mechanism
8  whereby the existing lines can be flagged --
9       Q.   Uh-huh.
10       A.   -- and they'll use a magnetic or something,
11  and then we can build where there is space.
12       Q.   And you go underneath the roads and
13  everything like that?
14       A.   Yeah, you drill and bore underneath roads,
15  underneath driveways, generally.
16       Q.   Okay, and what is the cost to -- is that
17  cost passed on to the HOA, or the POA, or is that --
18       A.   No, the way the bargain works is we front
19  the costs, like for Palencia North, you're here on behalf
20  of Lennar, which is the proprietor of Palencia North, we
21  fronted the cost of building, and then in exchange we get
22  a long term contract, though which we amortize our costs
23  and achieve our return on capital.
24       Q.   And when you, when you say you upfront the
25  costs, then you subcontract that out, or is that something

Page 32

1  that you actually do, your company actually does do the
2  boring and the whole bit?
3       A.   We manage it, and oversee it, but we don't
4  have our own boring equipment, for example, so we
5  subcontract that.
6       Q.   Remember the days when we had switches,
7  right?  You don't use switches any more, right?
8       A.   We have multiplexers.
9            MS. FEINMAN:  Didn't you have a case with
10  switches that we dealt with, many, many years ago?
11            MR. ROSENDORF:  I wasn't involved in that,
12  but, yeah, I remember that.
13            MS. FEINMAN:  Yeah.
14            THE WITNESS:  You're thinking maybe of phone
15  switches, like a select phone switch?
16            MR. ROSENDORF:  That may have been.
17            MS. FEINMAN:  It may have been.
18            MR. ROSENDORF:  It was a while ago.
19            MS. FEINMAN:  Yeah, it's been years.
20            THE WITNESS:  Yeah, so assets around, in a
21  community wouldn't be the switch.  A switch would be at a
22  central --
23  BY MS. FEINMAN:
24       Q.   Right, a central location.
25       A.   Right.

8 (Pages 29 to 32)

Page 33

1    Q.   Do those still exist?
2    A.   Not --
3    Q.   Not in the way I'm thinking of?
4    A.   A switch is really antiquated.
5         MS. FEINMAN:  Okay.  Right, well, there I
6  go, I just aged myself.
7         MR. ROSENDORF:  We're dating ourselves.
8         THE WITNESS:  I think I've got a couple
9  years on both of you.
10        You still use the word for switch for an
11  electronic switch, even though there aren't any switches
12  in them.
13        MS. FEINMAN:  Right.
14        THE WITNESS:  Switch is a mechanical thing
15  but, you know, in the field, when you build a plant, there
16  aren't any switches.  There is something called a
17  multiplexer, which is very different.
18  BY MS. FEINMAN:
19    Q.   Okay.  All right.  So the position is that
20  BankUnited is only -- is owed a million dollars now,
21  correct, out of -- they were paid down --
22    A.   Yes.
23    Q.   -- the six.
24        Okay, and what is your estimate of what you
25  -- I mean, if you're going to file a 363 sale, what is

Page 34

1  your estimate of the value that you're seeking?
2    A.   Well, you know --
3    Q.   And I'm not tying you to, it has to be this
4  amount, you know, higher and better offers are always the
5  best, but what are you looking at?
6    A.   Well, it's -- I've only been involved in one
7  bankruptcy where I was the buyer.
8    Q.   Uh-huh.
9    A.   You know, the dynamics of this -- you know,
10  the bank pitched the bankruptcy sale as something that's
11  both more expeditious, and where you could get healthy
12  bidding underway.  I realize it's a distressed environment
13  as well.  So, you know, I really don't -- it just would be
14  a wild, unsupported, high number, or low number.  I really
15  don't know.
16    Q.   The tangible property taxes that are due to
17  Collier County, have the returns been filed?
18    A.   I don't know, but I would question that, and
19  that it should be marked as disputed.  So that pertains --
20    Q.   Yes, they are disputed.
21    A.   That pertains to assets that we sold --
22    Q.   Right.
23    A.   -- a year and a half ago.
24    Q.   So, but you don't know whether the returns
25  were filed, or do you?

Page 35

1         MR. GOLDSTEIN:  We picked those up online --
2         MS. FEINMAN:  Okay.
3         MR. GOLDSTEIN:  -- and we marked them as
4  disputed, because theoretically they should have been paid
5  in connection with the sale.
6         MS. FEINMAN:  Right.
7         MR. GOLDSTEIN:  So, they didn't have a
8  record of having owed them, but Collier County had a
9  record of them being owed.
10        MS. FEINMAN:  Well, that's why I'm asking,
11  they have a record of them being owed.  Do they have a
12  record of receiving returns?
13        MR. GOLDSTEIN:  That, I don't know.
14        MS. FEINMAN:  Okay.
15        THE WITNESS:  They received returns in the
16  past, but I wouldn't expect that we've been filing returns
17  after we sold the assets.
18        MS. FEINMAN:  Right.  Well -- right.
19        MR. GOLDSTEIN:  So that may be how it
20  cropped up for those years.
21  BY MS. FEINMAN:
22    Q.   Okay, and then the payroll taxes, do you
23  know for what period that's for?  And that's not listed as
24  disputed.
25    A.   I don't know.

Page 36

1    Q.   Okay.  Do you know if your payroll taxes,
2  your 940s and 941s were timely filed?
3    A.   I would think so, but I don't know.
4    Q.   And what about the St. Johns County Tax
5  Collector?
6    A.   Well, so those, those -- I just don't -- I'm
7  not the one that would know the status of whether we filed
8  them timely.  Whenever I say "I don't know", it doesn't
9  imply that we didn't file them.
10    Q.   No, I understand, you don't know.
11    A.   I'm under oath.  If I don't know, I'm
12  comfortable saying I don't know.
13    Q.   Okay.
14    A.   But whereas Collier County, we don't think
15  we owe them, because those assets were sold, and they are
16  attached to the assets that's -- sobeit.  The Collier --
17  the St. Johns County, that's where our assets are.
18    Q.   Uh-huh.
19    A.   So I would expect that we're not disputing
20  those, except perhaps as to the details of the amount, and
21  I don't know if we're disputing those.
22    Q.   Okay.  It says here you owe, it says a
23  nominal amount, but it's for lawn service.  Is part of
24  your -- when you put in your new fiber, cable, whatever,
25  your work, were you obligated to put the lawn back in the

Page 37

1  way you found it?
2      A.   We always do.
3      Q.   So is that what the lawn service would be
4  for?
5      A.   I wouldn't think so.  I wouldn't think a
6  lawn service would be brought in for that.  You know, the
7  construction crews are responsible for putting the sod
8  back in.
9      Q.   Okay.  So why do you think you -- why are
10  you listing a lawn service as a creditor?
11     A.   I wouldn't have expected that we had a lawn
12  service as a creditor.
13     Q.   Okay.  Did you ever live in Naples yourself?
14     A.   No.
15     Q.   Okay.  Are all your licenses paid?
16     A.   I don't know, but again, not to imply that
17  we haven't.
18     Q.   Uh-huh.
19     A.   I just, as a matter of fact, don't know, and
20  the reason I was late on you is that my cell phone was not
21  -- I can't text Sally to get you those answers.
22     Q.   Okay.  You provide health insurance for your
23  employees?
24     A.   I believe so, yeah.
25     Q.   Florida Blue?

Page 38

1      A.   That sounds right.
2      Q.   Okay.  What else, do you provide them with
3  anything else, retirement, 401(k)?
4      A.   I think we have a 401(k), I don't know for
5  sure.
6      Q.   Okay.
7      A.   Health insurance.
8      Q.   It says here Rhodes Holding 401(k) plan.
9  Does that sound familiar to you?
10     A.   Well, Rhodes Holdings, an "s" at the end of
11  Holdings --
12     Q.   Rhodes, I'm sorry, excuse me.
13     A.   Holdings, plural, Holdings.
14     Q.   Right, right, Holdings.
15     A.   Yeah, that's the -- I believe that's the
16  1 percent member.  It's a long standing, essentially,
17  management company --
18     Q.   Uh-huh.
19     A.   -- that I had back through my years in real
20  estate.  It presumably has a 401(k) plan, I'm just kind of
21  inferring.  I don't know whether employees participate in
22  that plan, I really don't know that much about how the
23  plans work, and Sally would know.
24     Q.   And who is Frank Mambucca?
25     A.   Frank is that guy that assisted with the

Page 39

1  Summit sale.
2      Q.   Oh, the sale, okay.
3      A.   He's a broker, but he's not really a broker.
4  So whatever he did, that's the guy we talked about
5  earlier.
6      Q.   Uh-huh, and what kind of legal work did
7  Gunster provide?
8      A.   Gunster, I mean, I've used -- I've worked
9  with Gunster, Mitch Schepps at Gunster forever.  It might
10  have been tax, it probably was tax.
11     Q.   Okay.
12     A.   I mean, if they did anything for Litestream,
13  it was a long time ago, but that could be it.
14     Q.   Okay.  It's indicated here that you've made
15  loans to the company of about 1.8 million.  Are those
16  loans documented with writings, written documents, written
17  loan agreements?
18     A.   Yeah, I don't know.  I mean, they're -- I
19  know that that amount was tallied up by bank statement,
20  you know, records and it was done to the dollar and penny,
21  it was based on documented transfers into the company.
22     Q.   The source of funds that were used to pay
23  Furr & Cohen's retainer was from BankUnited?
24     A.   That's right.
25     Q.   Was that added to their balance?

Page 40

1      A.   That's my understanding, yes.
2          MS. FEINMAN:  Okay.  Yes, I would like to
3  know if that 401(k) plan is being utilized by the
4  employees.
5          MR. GOLDSTEIN:  Okay.
6          MS. FEINMAN:  Can you check?  Because it
7  does show that there is some kind of plan in existence.
8  BY MS. FEINMAN:
9      Q.   And you have documents in storage at Life
10  Storage?
11     A.   I don't know where.
12     Q.   It says Life Storage in West Palm Beach,
13  historical records, including invoices and bank
14  statements.
15         Who is Patricia Hertvik?
16     A.   She's the employee in the office at
17  500 Australian.
18     Q.   Okay.  The only employee that's there?
19     A.   Uh-huh, that's right.
20     Q.   And what is her role?
21     A.   She does bookkeeping, at Sally's direction,
22  Litestream bookkeeping.
23     Q.   And who has ultimate -- do you have the
24  ultimate decisionmaking?
25     A.   Yes.

Page 41

1    MS. FEINMAN:  All right.  I'm going to let
2  creditors here ask questions they may have.  I'd just,
3  again, ask that you state your name and who you represent.
4    MR. ROSENDORF:  Thank you.
5    My name, again, is David Rosendorf, for
6  whoever is possibly transcribing this, R-o-s-e-n-d-o-r-f.
7  I'm with the law firm of Kozyak Tropin & Throckmorton, and
8  I'm counsel to Lennar Homes.
9    EXAMINATION
10  BY MR. ROSENDORF:
11    Q.    You're familiar with Lennar Homes?
12    A.    Yes.
13    Q.    What's their relationship to Litestream?
14    A.    None.  I mean, there is no direct
15  relationship.  They have this community, Palencia North,
16  of which they were the developer.  I believe that they're
17  in control of, and the sole shareholder of the homeowners'
18  association, but I don't think we have any direct
19  relationship with Lennar.
20    Q.    You're not aware of any litigation between
21  Litestream and Lennar?
22    A.    Yes.
23    Q.    Okay.  What was that about?
24    A.    It was in connection with an agreement that
25  Litestream entered into with the original developer, Lexi

Page 42

1  North, ICI Homes.
2    Q.    Right.
3    A.    So, that's the, that's the basis of that
4  litigation.  We didn't really defend that litigation.  If
5  we did we would have held that the ICI contract was never
6  signed.  So, we never had a contractual relationship with
7  Lennar.  They got a default judgment because we didn't
8  defend it.
9    Q.    Right.  Okay.  So Lennar did get a judgment
10  up in St. Johns County on that claim, correct?
11    A.    They did.
12    Q.    Okay, and that judgment was recorded?
13    A.    I don't know.
14    Q.    Okay.  You're aware that Lennar got a writ
15  of garnishment in connection with that judgment?
16    A.    I believe so.
17    Q.    Okay, and the -- there were several writs
18  issued, but one was against a bank account at PNC Bank?
19    A.    My understanding -- I haven't seen most of
20  these documents, but so when I affirm that there is a
21  writ, I haven't actually seen the writ, I don't know about
22  the documentation with PNC, but I've heard about it.
23    MR. ROSENDORF:  Okay.  If you could, do you
24  have a copy of the schedules for the witness to look at?
25    MR. GOLDSTEIN:  Yes.

Page 43

1    MR. ROSENDORF:  If you could go to 3.41 in
2  schedules?
3    MR. GOLDSTEIN:  A page number would be --
4    MR. ROSENDORF:  Yeah, hang on.  Yeah, I
5  appreciate that.  Let me see if I can find it.  Give me
6  one sec.
7    Page 21 of 46, at the top.
8  BY MR. ROSENDORF:
9    Q.    Do you see that Lennar Homes, LLC is listed
10  there --
11    A.    Yes.
12    Q.    -- Line Item 3.41?
13    And this is within, if you look at the
14  bottom, Schedule E/F, which is creditors who have
15  unsecured claims.
16    Do you understand the difference between a
17  secured claim and an unsecured claim?
18    A.    I do.
19    Q.    Okay.  Do you know why Lennar was listed as
20  holding an unsecured claim?
21    A.    No.
22    Q.    Okay.  Do you know why the Lennar claim is
23  listed as disputed?
24    A.    Yes, for the reason that I just briefly
25  mentioned to you.

Page 44

1    Q.    Okay, but you acknowledge that Lennar
2  obtained a final judgment?
3    A.    To my knowledge.
4    Q.    Okay.  Do you know whether any appeal was
5  taken of that final judgment?
6    A.    It hasn't been.
7    Q.    Okay.  The PNC account that I mentioned,
8  that is also listed in your schedules.  If you could go to
9  Page 3, Line Item 3.2 lists a bank account for PNC Bank, a
10  checking account, number 8051, with, as of the petition
11  date, approximately $70,000 in it, right?
12    A.    Yes, sir.
13    Q.    Okay.  That bank account, to your knowledge,
14  is still there and still holds those funds right now?
15    A.    To my knowledge.
16    Q.    Okay, and I apologize for repeating just a
17  little bit, Rhodes Holdings, you indicated, is a 1 percent
18  member of Litestream?
19    A.    I'm not sure.  It could -- I think there is
20  a 1 percent member that's (inaudible) --
21    Q.    Okay.
22    A.    I think it's that way.
23    Q.    Okay, but Rhodes Holdings is an entity that
24  you solely own?
25    A.    Yes.

11 (Pages 41 to 44)

Page 45

1    Q.   Okay, and the remaining 99 percent of
2  Litestream Holdings is owned by you, individually?
3    A.   That's right.
4    Q.   Okay.  At Page 45 of the schedules and
5  Statement of Financial Affairs, this is the list of equity
6  security holders.  This states "none".  Do you have an
7  understanding of why this reports no equity security
8  holders of Litestream Holdings?
9    A.   No.  What would an equity security holder
10  be?  I mean, if you want to answer the question, I'm glad
11  to fill you in but, I mean, I didn't prepare this, and I
12  didn't object to that, but I don't really understand what
13  an equity security holder is.
14    Q.   With respect to an LLC, you mean?
15    A.   I mean I can tell you that I'm a member of
16  the LLC.
17    Q.   Okay.
18    A.   And one of my management companies is the --
19  that's a 1 percent member.
20    Q.   Okay.  If you could go to Page 34 of the
21  schedules and Statement of Financial Affairs?
22        If you'd look, and I apologize, I've got to
23  pull it up on my phone, I didn't bring the full set here.
24        MS. FEINMAN:  Here, do you want mine?
25        MR. ROSENDORF:  Ah, thanks.

Page 46

1        MS. FEINMAN:  You can use mine.
2        MR. ROSENDORF:  Thank you.  I appreciate it.
3  BY MR. ROSENDORF:
4    Q.   If you look at Question Number 4 in the
5  Statement of Financial Affairs, this asked for payments or
6  other transfers of property made within one year before
7  the filing that benefitted any insider, and that indicates
8  none, correct?
9    A.   So, there certainly haven't been any
10  transfers of property.  I received distributions during
11  the year, I would guess, and I would have to ask our
12  bookkeeper to summarize that.  I'm not sure whether that
13  would be considered a payment, but it sounds like it
14  would.  So that may be incorrect, but there hasn't been
15  any transfers of property.
16    Q.   When you say "property", are you referring
17  to real property?  What --
18    A.   Any non-cash.  I mean, we haven't
19  transferred, for example, contracts, we haven't
20  transferred ownership to a plant, we don't have any of
21  that.
22    Q.   Okay.  So it was your understanding when you
23  prepared these schedules then that Question 4 was not
24  seeking information as to any payments made to insiders?
25    A.   So, I didn't prepare the schedule.  I did

Page 47

1  look it over, and approve it and sign it but, you know, I
2  think that as I reviewed this, I was looking at the words
3  "transfer property" and there hasn't been any, but if a
4  payment, such as a dividend payment or a distribution to
5  me, would be what this is referring to, then this should
6  be amended to say that there has been, yes.
7    Q.   Okay.  So were there payments to yourself or
8  to Rhodes Holding within the year prior to the filing of
9  the bankruptcy case?
10    A.   There were, but I don't think there was to
11  Holdings, I think to myself.
12    Q.   Let me show you, and I apologize I only have
13  one copy, but I'll share it with you, this is a bank
14  statement for the PNC account, with the numbers ending
15  8051.
16        Can you confirm that that's an account
17  statement for Litestream Holdings?
18    A.   It looks to be.
19    Q.   Okay.  If you could go back to the eighth
20  and ninth pages of that document for me?  I believe that
21  I've highlighted them.
22        Does that statement reflect payments to
23  Rhodes Holdings?
24    A.   Yeah, I mean, on the right the reference
25  number, as it's called, has Rhodes Holdings.  I assume

Page 48

1  that those are -- because I don't review these statements
2  usually.
3    Q.   Right.
4    A.   It says reference number, it looks like that
5  is the payee, then there is a bunch of, it looks like
6  about $150,000 perhaps.
7    Q.   Right, and what's the date on that
8  statement?  If you go back to the front of it, it should
9  be on the first page.
10    A.   It's January.
11    Q.   Of 2019?
12    A.   Right.
13    Q.   Okay.
14    A.   January a year ago.
15    Q.   So that's just in one month.
16        Do you have an idea of how much was
17  transferred by Litestream to yourself or Rhodes Holdings
18  in the one year prior to the petition date?
19    A.   I wouldn't think it's much more than that,
20  and some of these were dividends, and some were -- whether
21  repayment of debt or payment in lieu of salary.  I don't
22  think it's much more than that, but -- okay.
23    Q.   How did Litestream Holdings determine how,
24  and when, and how much to pay as dividends?
25    A.   We didn't have any policy, no shareholders

12 (Pages 45 to 48)

Page 49

1  besides myself.
2      Q.   What indication in Litestream's books and
3  records would be made to reflect whether a payment was a
4  dividend or something else?
5      A.   Well, if it was a salary, that would be
6  reflected differently.
7      Q.   Okay.  Anything else?
8      A.   Not that I know of.
9      Q.   Okay.  You indicated earlier you've not
10  drawn a salary for approximately two years you think?
11      A.   Right.
12      Q.   Okay.
13      A.   I have not, perhaps longer.
14      Q.   Okay.  So other than dividends or loan
15  repayments, if we see payments to Rhodes -- excuse me,
16  Rhodes Holdings in Litestream's accounts, those consist of
17  either dividends or loan repayments.  Is there anything
18  else that those would represent?
19      A.   Perhaps management service to some extent,
20  but it's, I would say, primarily, dividends.
21      Q.   Are there any agreements between Litestream
22  and BankUnited with regard to the handling of this
23  bankruptcy case?
24      A.   Yes.
25      Q.   What are those?

Page 50

1      A.   Well, not with them handling, no.
2      Q.   Okay.
3      A.   No.  There are agreements between me and
4  BankUnited, yes, but they don't -- I don't think that they
5  are regarding the handling of this bankruptcy.
6      Q.   Okay.
7      A.   So, no.
8      Q.   What do they relate to then?
9      A.   I'd rather not reveal, but they do not
10  relate to the handling of this bankruptcy case.
11      Q.   Do they relate to Litestream?
12      A.   No, they do not.  They relate to me,
13  personally.
14      Q.   You have other -- personally you have other
15  financial relationships with BankUnited?
16      A.   No.
17      Q.   But you have agreements personally with
18  BankUnited --
19      A.   Yes.
20      Q.   -- that you're not going to disclose?
21      A.   That's right.
22          MS. FEINMAN:  Have you personally guaranteed
23  the debt?
24          THE WITNESS:  Yes.
25  BY MR. ROSENDORF:

Page 51

1      Q.   By the way you said, yes, that you
2  personally guaranteed the debt, that was referring to the
3  BankUnited debt?
4      A.   That's right.
5      Q.   Are there any other obligations of
6  Litestream that you've personally guaranteed?
7      A.   No.
8      Q.   Schedule H of your schedules and Statement
9  of Financial Affairs, at Page 32 --
10          MR. ROSENDORF:  If you could, Counsel?
11  BY MR. ROSENDORF:
12      Q.   -- lists co-debtors, which is all people or
13  entities that are also liable for any of the debts listed
14  in the schedules.  Your name doesn't appear here, does
15  it?
16      A.   No.
17      Q.   Why not?
18      A.   I don't know, I didn't prepare this.  I
19  don't know what a co-debtor refers to.
20      Q.   You are also liable for the debt to
21  BankUnited, right?
22      A.   Yes.
23      Q.   Okay.  You understood that when I asked it
24  of you, correct?
25      A.   Yes.

Page 52

1      Q.   Okay.
2      A.   You see, counsel just asked if I was a
3  guarantor, yes.
4      Q.   The --
5      A.   So it looks like we should amend that to add
6  me.  I'm not really sure why Cable Bahamas is on it in the
7  first place.
8      Q.   Is Cable Bahamas co-liable for the debt to
9  BankUnited?
10      A.   No, and that's why I was thrown off when I
11  looked this over before it was submitted.  I'm not sure
12  why.  Their role would be as a guarantor of a note which
13  was owed, an asset of Litestream, owed to Litestream as
14  part of the $6.075 million sale.
15      Q.   Uh-huh.
16      A.   Part of the consideration was a note, and
17  they guaranteed that note, which was an asset of
18  Litestream.
19      Q.   In other words, Cable Bahamas is also liable
20  to Litestream in connection with the sale of the Naples
21  assets?
22      A.   In particular as to the fulfillment of
23  the $700,000 note, which was a piece of our
24  consideration.
25      Q.   Okay.  Is that note still outstanding, or

13 (Pages 49 to 52)

Page 53

1 has that been paid?
2     A.   It's been paid in large part.
3     Q.   Okay.
4     A.   Cable Bahamas is a guarantor of that note,
5 as was Summit.  They obtained -- we collaterally assigned
6 that note to BankUnited.
7     Q.   Right.
8     A.   They obtained BankUnited's release --
9     Q.   Uh-huh.
10     A.   -- of their interest, but they haven't
11 obtained Litestream's, because we don't believe that
12 they've quite fulfilled their payment due.
13     Q.   Okay.  So that's a note owed by Summit, and
14 guaranteed by Cable Bahamas --
15     A.   Right.
16     Q.   -- originally owed to Litestream,
17 collaterally assigned to BankUnited.  BankUnited has given
18 a release, but Litestream has not?
19     A.   Exactly.
20     Q.   Okay.
21     A.   So, that would be -- so I didn't see myself
22 in the category of these two parties --
23     Q.   Right.
24     A.   -- when I looked this over, and as you can
25 see, I'm not, but if I read the fine print here, it

Page 54

1 seems like I -- I'm not even sure they should be
2 co-debtors.
3     Q.   Right.
4     A.   But I should.
5     Q.   Right.  Okay.
6     A.   So we should amend that, too.
7     Q.   Okay.  The $6 million purchase price for the
8 Naples assets, was there a particular metric that that
9 sale price was arrived at through?
10     A.   $1,676 per subscriber.
11     Q.   Okay, and I can do the math on that, and I
12 will, I won't make you sit while I do that, but how does,
13 how does the subscriber count that was the subject of the
14 Naples sale compare to the subscribe count that is left
15 with the remaining asset?
16     A.   So the subs in St. Johns County are about
17 1,750, not counting those passings, that are 2,500
18 passings that we built and own but haven't dealt --
19     Q.   Right.
20     A.   -- with those people.
21     Q.   It's not a live customer, it's a potential
22 customer?
23     A.   Right, but there is value in that asset, and
24 in St. Johns County, we also have other types of assets
25 besides subscriber investments, but you would apply the

Page 55

1 $1,676 to the 1,750 subscribers.  In my footnote, 200 of
2 those subscribers are tied up in --
3     Q.   In the litigation?
4     A.   -- the litigation that we need to resume
5 defending.  It should be worth 200 times 16,076, so that's
6 a 350,000 asset, perhaps more, but you take 1,750, perhaps
7 less 200, multiply it by 17 -- 16,076, and you'd get, you
8 know, two million four.
9     Q.   Okay.
10     A.   Not including the --
11     Q.   Plus some incremental value for the
12 passings?
13     A.   Not including the passings, not including
14 the 20 miles of 144 thread piping that we own.
15     Q.   Okay.
16     A.   And the satellite farm with seven dishes,
17 bigger than this room.
18     Q.   Who owns the land that the satellite farm is
19 located on?
20     A.   The CDD that (inaudible) that it's in.
21     Q.   Okay.  So Litestream owns the physical
22 assets --
23     A.   Right.
24     Q.   -- the satellites.  It's situated on land
25 owned by the association, or the development?

Page 56

1     A.   Yes, it's not the HOA.
2     Q.   Okay.
3     A.   It's self-governing -- you know, I'm sure
4 you know what the CDD is.
5     Q.   Right.
6     A.   So it's CDD land.
7     Q.   Does Litestream pay any lease, or anything
8 else for occupying that land?
9     A.   There is a perpetual lease, but we don't pay
10 the lease.
11     MR. ROSENDORF:  Got it.  Okay.  I don't
12 have --
13     MS. FEINMAN:  Okay.  No other questions?
14     MR. ROSENDORF:  No other questions for me.
15     MS. FEINMAN:  Okay.  Obviously there needs
16 to be some amendments made.
17     CONTINUED EXAMINATION
18 BY MS. FEINMAN:
19     Q.   And who is going to be preparing the monthly
20 operating reports?
21     A.   That would be our office.  The operating
22 reports --
23     Q.   The monthly operating reports that need to
24 be filed with the Court.
25     A.   We would be the ones with any operating

14 (Pages 53 to 56)

Page 57

1  details.
2  THE WITNESS:  Do we have a template for
3  what's needed in the operating reports?  Have we filed
4  any?
5  MR. GOLDSTEIN:  Not yet.
6  MS. FEINMAN:  But, so you're not hiring an
7  accountant to do it, are you?
8  MR. GOLDSTEIN:  No.
9  MS. FEINMAN:  That's not your intention?
10  MR. GOLDSTEIN:  No.  (Inaudible) will be
11  prepare them.
12  BY MS. FEINMAN:
13  Q.  Okay, and you understand that U.S. Trustee
14  fees will be due on a quarterly basis?
15  A.  (No verbal response.)
16  MS. FEINMAN:  And that's fit into the cash
17  collateral budget, correct?
18  MR. GOLDSTEIN:  Yes.
19  THE WITNESS:  Lennar, as I recall in a
20  phone call last week, suggested that we should add that,
21  and so we have a new budget that I think you need by
22  tomorrow.
23  MS. FEINMAN:  The hearing is on Friday,
24  right?
25  MR. GOLDSTEIN:  The hearing is on Friday,

Page 58

1  yes.  We'll get the new budget circulated prior, that is
2  the intention.
3  MS. FEINMAN:  Okay.
4  MR. ROSENDORF:  I have just one brief
5  follow-up on that particular subject.
6  MS. FEINMAN:  Okay.
7  MR. ROSENDORF:  And this may be better
8  directed to you, I don't know, you're not using the funds
9  in PNC that were subject to the writ of garnishment for
10  cash collateral, correct?
11  MR. GOLDSTEIN:  We don't have access to it,
12  so, no.
13  MR. ROSENDORF:  Okay.  That's what I
14  thought.  Thank you.
15  MS. FEINMAN:  All right.
16  THE WITNESS:  The bank is trying, to my
17  knowledge but, no, we don't, we haven't touched that
18  account since --
19  MR. ROSENDORF:  Okay.  All right.  Based on
20  that, I'm going to go ahead and conclude.
21  When do you think you're going to prepare
22  the amendments?
23  MR. GOLDSTEIN:  Probably within the next
24  week to 10 days.
25  MS. FEINMAN:  Okay.

Page 59

1  MR. GOLDSTEIN:  It's not a lot.
2  MS. FEINMAN:  Okay.  All right.  Thank
3  you.
4
5
6  (Thereupon, the 341 Meeting of Creditors was
7  concluded.)

Page 60

1
2  CERTIFICATION
3
4  STATE OF FLORIDA    :
5  COUNTY OF MIAMI-DADE  :
6
7  I, Cheryl L. Jenkins, RPR, RMR, Shorthand
8  Reporter and Notary Public in and for the State of Florida
9  at Large, do hereby certify that the foregoing Section 341
10  Meeting of Creditors was transcribed by me from a digital
11  recording made on the date and at the place as stated in
12  the caption hereto on page 1; that the foregoing
13  computer-aided transcription is a true record to the best
14  of my ability of said proceedings.
15  WITNESS my hand this 27th day of
16  January, 2020.
17
18
19  _____
20  CHERYL L. JENKINS, RPR, RMR
21  Court Reporter and Notary Public
in and for the State of Florida at Large
22  Commission #GG 138863
December 27, 2021
23
24
25

15 (Pages 57 to 60)